Argued and submitted July 15, 1992, affirmed October 20, 1993, reconsideration denied February 2, petition for review denied March 1, 1994 (318 Or 458)

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Respondent,*

*v.*

Floyd Thomas ALTIMUS
and Janice M. Church,
*Appellants,*

*and*

Russell OLSON,
*Defendant.*

(CV 89-137; CA A66578)

862 P2d 109

Charles F. Hudson argued the cause for appellant. With him on the briefs were Robert E. Maloney, Jr., and Lane Powell Spears Lubersky.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson,* Chief Judge, and De Muniz and Leeson,** Judges.

De MUNIZ, J.

---

* Richardson, C. J., *vice* Buttler, J., retired.

** Leeson, J., *vice* Rossman, J.

## De MUNIZ, J.

In this condemnation action, defendants Altimus and Church (defendants) appeal from a jury verdict that awarded them $7,000 as "just compensation" for the state's taking of their land. The primary issue is whether the trial court erred in admitting evidence that a portion of the property could be subjected to a forced dedication policy if defendants sought annexation to a nearby city. We affirm.

Defendants owned a 13-acre parcel of undeveloped farmland near the City of McMinnville. The property, located in the county's "exclusive farm use-40" zone, is bordered on one side by State Highway 18. Plaintiff condemned approximately two acres of defendants' land for the purpose of widening the highway and constructing a parallel frontage road. The only issue at trial was the fair market value of the two acres.

Defendants presented evidence that the property is within McMinnville's urban growth boundary and would be within the city's designated "light industrial" zone if they applied for both annexation and a zone change to bring it into compliance with McMinnville's comprehensive plan. Expert witnesses for both sides agreed that the highest and best use of the property is limited light industrial. Defendants' witnesses testified that, if re-zoned for that type of industrial use, the two-acre parcel would be worth between $65,000 and $86,000. A witness for plaintiff testified that McMinnville had a policy that allowed, but did not require, the city to force property owners to dedicate a portion of their land to road improvement projects upon annexation, in return for granting the zoning change. Another witness, Hughes, testified that the property at issue was worth $5,300. Hughes based that figure on his opinion that one of the two acres had only agricultural value, because he assumed that McMinnville would condition any zone change on defendants' dedication of one acre for the highway project.

Defendants' first assignment of error is directed at the trial court's decision to admit Hughes' testimony that defendants could be required to deed to plaintiff a portion of the property being taken in order to secure a zone change

upon annexation to McMinnville. At trial, defendants moved to exclude that category of evidence on the ground that

> "to allow such evidence and to allow this theory of [plaintiff's] would be violating [*sic*] our Federal and State of Oregon constitutional right to just compensation for property that is taken, because it would deprive [defendants] of just compensation for that property."

They contend that an unconstitutional dedication policy would be unenforceable and, therefore, irrelevant to a determination of the property's fair market value and inadmissible as evidence at trial. Defendants also argue that, although "theoretically" McMinnville could require them to dedicate a portion of their frontage to plaintiff for the state highway project, evidence of that possibility was speculative, because no existing ordinance required them to dedicate any of their property in exchange for a zone change.

Similar questions were raised in *Dept. of Trans. v. Lundberg*, 312 Or 568, 825 P2d 641, *cert den* ___ US ___, 113 S Ct 467 (1992). In *Lundberg*, the state condemned a 10-foot strip along each of the defendants' properties for the purpose of building a sidewalk. A City of Portland ordinance required that applicants, as a condition of obtaining a building permit, conditional use permit, zone change, land partition or variance, dedicate a portion of their property for the construction of a sidewalk, where needed. Neither of the defendants had applied for a building permit or taken any action that would have made the ordinance applicable to them. At a trial to determine the appropriate price for the state's acquisition, the defendants challenged the admissibility of evidence of the city's ordinance on the grounds that, *inter alia*, it was irrelevant, and its application violated the takings clause of the United States Constitution.[1] On appeal, the Oregon Supreme Court held that evidence of the ordinance was relevant, because the parties' experts had established that the highest and best use of the defendants' properties was commercial, but the properties had not been developed for commercial use and the defendants would not be able to develop them without first satisfying the sidewalk dedication requirement. Accordingly, the ordinance was "a

---

[1] The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."

matter that tend[ed] to affect the fair market value of the condemned property for its highest and best use." 312 Or at 575. The court also held that the ordinance was constitutional under the standards articulated in *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), because it

> "reasonably relates to commercial development by providing pedestrian access and mitigates the negative impact of any proposed commercial use by buffering both the pedestrian and the commercial use from the vehicle use. The city's means for achieving these objectives is to require the owner to dedicate property for a sidewalk when the owner seeks to develop the property. The ordinance substantially furthers those purposes. An essential nexus exists between development of property abutting public streets and sidewalk dedication. The sidewalk dedication requirement * * * serves the same legitimate governmental purposes that would justify denying defendants permits to develop their commercially-zoned properties. Although the sidewalk dedication requirement results in an appropriation of land for a public use, under *Nollan* that requirement would not be considered a taking if it were attached to a permit to develop property. *See Nollan v. California Coastal Comm'n, supra*, 483 US at 836. [The Portland ordinance] is, therefore, a valid regulation of the use to which defendants' properties can be put." 312 Or at 577-78. (Citation omitted.)

After concluding that, on application for a land use approval, the sidewalk dedication requirement was not unconstitutional and evidence of its existence was relevant to determining the value of the affected property, the court summarily addressed the question of whether *evidentiary* use of the ordinance against the defendants constituted an unconstitutional "taking," because they had not yet applied for any land use approvals. It held that

> "[e]videntiary use * * * of a valid regulation of a condemnee's land use that is a relevant factor in determining just compensation does not constitute an unconstitutional taking." 312 Or at 578.

■    In this case, the evidence established that the highest and best use of defendants' property was light industrial. To secure a change from agricultural to industrial zoning, defendants acknowledged that first they would need to seek annexation by McMinnville. At that time, they would be subject to

the city's policy of forced dedication.[2] Accordingly, evidence of the existence of the policy was relevant. The fact that the city might choose not to require dedication by defendants affects only the weight of plaintiff's evidence, not its relevancy. Having sought to convince the jury that the value of their land would be greater *if* they were annexed by the city and *if* they secured the desired zone change, defendants cannot complain that evidence of the city's dedication policy, which could be applied to defendants' property upon annexation, was "too speculative." The trial court did not err in declining to exclude evidence of the dedication policy. Neither did it err in allowing expert testimony as to the policy's effect on the fair market value of the property.[3] *Dept. of Trans. v. Lundberg, supra.*

■ Having determined that the policy was relevant to a determination of just compensation, we turn to the question of its constitutionality. Defendants argue that the policy works a taking because, under it, the past practice of the City of McMinnville has been to allow the state to determine its land needs for the highway project and then to require the land owner to dedicate that precise amount of land directly to the state. Defendants contend that a direct relationship exists between the state highway project and previous dedications that have been required by the city, in that all were determined by the state, based on its need for land to widen Highway 18, and, according to defendants, all of the dedications were required "for the sole purpose of reducing the amount of money that the state otherwise would have paid as just compensation."

Again, a similar contention was addressed in *Lundberg.* There, the defendants claimed that Portland had adopted its sidewalk dedication ordinance *"in order to depress property values* before the state undertook condemnation actions." 312 Or at 579. (Emphasis in original.) The

---

[2] We note that, although much of defendants' brief is dedicated to attacking the city's dedication policy, they neither quote the objectionable language of the policy nor indicate the portion of the record that contains a copy of the policy. Having searched the record, it appears that the challenged policy was received into evidence as Defendant's Exhibit 106.

[3] For the same reasons, the court did not err in declining defendants' requested jury instruction, which would have told the jury to disregard evidence concerning dedication requirements.

Supreme Court examined the evidence and concluded that the defendants had failed to provide support for their claim that the city had promulgated its dedication ordinance in order to reduce the value of the property at a time when the state was committed to condemning the property. In the present case, the challenged dedication policy is contained in an annexation ordinance, McMinnville Ordinance No. 4357, which requires that annexed property be located within the city's urban growth boundary and contiguous to the existing city limits.[4] The ordinance also provides, as a "policy" that is applicable to all annexation requests, that "[a]n adequate level of urban services must be available or made available, within three years time [*sic*] of annexation." The ordinance defines "adequate level of urban services" to include municipal sewer service, municipal water service and

"[r]oads with an adequate redesign capacity for the proposed use and projected future uses. Where construction of the road is not deemed necessary within the three-year time period, *the City shall note requirements such as dedication of right-of-way*, waiver of remonstrance against assessment for road improvement costs, or participation in other traffic improvement costs, for application at the appropriate level of the planning process. The City shall also consider public costs for improvement and the ability of the City to provide for those costs." (Emphasis supplied.)

In sum, the challenged policy ensures that the specified urban services are provided to properties that are annexed to the city, and it allows the city to require applicants to absorb some of the costs associated with the provision of those services by dedicating land, waiving objections to future assessments, or paying for the costs associated with other traffic improvements. Here, as in *Lundberg*, defendants

"have offered nothing more than the existence of the [challenged] ordinance and the existence of the state's project to support their claims that the purpose of the ordinance was to depress property values in contemplation of the

---

[4] In its "statement of purpose," the annexation ordinance states that the city "recognizes that the development of lands at an urban density must include the provision of an adequate level of required urban services such as sewer, water, and roads. Policies and procedures adopted in this ordinance are intended to carry out the directives of the McMinnville Comprehensive Plan, and to insure that annexation of lands to the City is incorporated into the process of providing a timely and orderly conversion of lands to urban uses."

state's condemnation proceedings. Defendants also have not shown that at the time of the enactment of the ordinance the state was committed to its * * * project." 312 Or at 580.

The record shows that the city originally conceived of widening the highway and constructing a bypass as early as the 1960's. It included that concept in its 1971 comprehensive plan, which required the city to develop an access plan, including left-turn lanes and frontage roads, to accommodate development in the relevant area. McMinnville Ordinance No. 4357 was passed on February 4, 1986. Plaintiff brought this action to condemn defendants' property in 1989. Defendants have not provided any evidence to support their allegation that the city applies its policy "for the sole purpose of reducing the amount of money" that the state would otherwise have to pay as just compensation. Moreover, the requisite nexus exists between the increased need for proper traffic circulation created by proposed industrial development and the dedication of a portion of defendants' land to a highway widening project that would obviate the need for the city to build a frontage road. *See Dolan v. City of Tigard*, 317 Or 110, 120-21, 854 P2d 437 (1993).

■       Next, defendants challenge the following instruction that was given to the jury:

> "In arriving at the fair cash market value of the property taken, you should base your verdict upon the highest and best use of the property being taken as allowed by existing land use regulations such as zoning or dedication requirements."

Defendants contend that the instruction was incorrect as a matter of law, because it "told the jury to consider *only existing* zoning requirements." (Emphasis in original.) They argue that, because the existing zoning of their property was agricultural, the jury was, in effect, told to disregard defendants' evidence of the probability of a zone change to light industrial use. We do not read the jury instruction in such a limiting light. By referring to "existing land use regulations such as zoning or dedication requirements," the instruction directed the jury's attention to the various regulations that had been discussed during trial: the property's agricultural zoning, city land use regulations that would be relevant if defendants sought annexation and a zone change, and the

dedication requirements to which defendants might be subjected upon annexation. If the instruction had sought to limit the jury's consideration to only the property's value in its present agricultural zone, logic requires that it would not have also referred to the dedication requirement, which was applicable only upon annexation. The trial court did not err in rejecting defendants' challenge to the instruction.

■ Defendants next assign error to the court's receipt of evidence of improvements in safety and other benefits of the highway project to other land owned by defendants. Before trial, defendants moved *in limine* "to restrict evidence of * * * general or special benefits" attributable to the highway project. The motion was granted. However, the court later allowed a witness to testify, over defendants' objection, that, before the highway project, a property owner would have had to pay for a frontage road. Plaintiff argues that the evidence was admissible, because it was relevant to establish the property's fair market value and was cumulative of testimony that had earlier been received without objection. We need not decide the question because, although defendants argue that the court erred in failing to sustain their objections, they fail to address the dispositive issue of whether the alleged error was prejudicial. Given that evidentiary error is not presumed to be prejudicial, OEC 103(1), under these circumstances, we decline to engage, *sua sponte*, in an analysis of whether the alleged error was reversible.

■ Defendants' remaining assignments are directed at the admission of testimony, elicited by plaintiff during cross-examination of defendants' valuation expert, regarding the prices at which nearby properties were sold after the highway project became known. They argue that the sales should not have been used as "comparables," because they occurred while condemnation was anticipated.

In *Highway Commission v. Callahan*, 242 Or 551, 553, 410 P2d 818 (1966), the Supreme Court considered the propriety of a trial court's decision to exclude such testimony and held:

> "In order for the sale price to be admissible, the property must not only have been reasonably comparable to the property sought to be condemned, but its sale must also have been made under normal and fair market conditions. A sale

price affected by the state's contemplated improvement of a highway and subsequent condemnation of adjacent property would not be such a sale. * * * Admissibility of evidence of sales of other land is largely within the discretion of the trial court."

Here, defendants themselves opened the door to evidence of comparable sales through the testimony of their own expert, and their subsequent attacks on the helpfulness of the "comparables" clearly conveyed to the jury their position that such evidence should be given little weight. Considered in that context, we cannot say that the trial court abused its discretion or committed reversible error when it allowed the challenged testimony.

Affirmed.