Argued and submitted April 18, reversed and remanded November 2, 1994

## Louis F. SCHULTZ
and Anna May Schultz,
*Appellants,*

*v.*

## CITY OF GRANTS PASS,
an Oregon municipal corporation,
*Respondent.*

(92-CV-0006; CA A77006)

884 P2d 569

James R. Dole argued the cause for appellants. With him on the brief was Schultz, Salisbury, Cauble, Versteeg & Dole.

Timothy J. Sercombe argued the cause for respondent. With him on the brief was Preston Thorgrimson Shidler Gates & Ellis.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

The City of Grants Pass (the city) approved petitioners' application to partition a parcel of property, subject to a number of conditions. Petitioners requested a writ of review, challenging the constitutionality of the conditions under the Takings Clause of the Fifth Amendment. The trial court entered judgment in favor of the city. We reverse and remand.

Petitioners own a 3.85-acre parcel of real property, located within the acknowledged urban growth boundary of Grants Pass. The northern boundary of the property abuts Savage Street. The eastern boundary abuts Beacon Drive. Petitioners wish to partition the parcel into two lots. The first lot would consist of a 90-foot by 201-foot parcel located at the corner of Savage Street and Beacon Drive. The second lot would consist of the remaining property.

Petitioners applied to the city for a development permit to partition their lot. The city approved the application, subject to conditions. Among the conditions were a 10-foot "dedication for county right-of-way" along the length of the portion of both of the parcels that abuts Beacon Drive and

"[a] 20-foot dedication, measuring from the street centerline, plus an additional 5-foot dedication for City right-of-way * * *"

along the length of the portion of the parcels abutting Savage Street, "including enough area to round the intersection."

In support of its conditions, the city made a number of findings, including the following:

"B.   The division of this property will increase the use of City streets which are immediately adjacent to the property. These streets are designate [sic] in the Comprehensive Plan and City Master Transportation Plan.

"The dedication and improvement of the street right of way will directly benefit this property through improved and expanded access from the parcels and through the City.

"The improvement of the streets will occur through a deferred development agreement/non-remonstrance as part of a local improvement district where the total costs of the improvements will be fairly apportioned to all properties in accordance with applicable laws. Based on the size and

proximity of this property to the street improvements, a designation of 50% is a reasonable apportionment.

"* * * * *

"D.   The improvement of the storm drain system will directly benefit this property and will help in preventing drainage from entering this property from the street and from adjacent properties to the north and east.

"The improvement of the storm drain system will occur through a deferred development agreement/non-remonstrance as part of a local improvement district where the total costs of the improvements will be fairly apportioned to all properties in accordance with applicable laws. Based on the size and proximity of this property to the storm drain improvements, a designation of 50% is a reasonable apportionment."

Petitioners filed a petition for a writ of review.[1] The parties stipulated to the record, with the following addendum:

"[The city] plans to adopt supplemental findings as part of the local government record. Petitioners reserve the right to object to any such supplemental findings offered by [the city] * * *."

The city then adopted and filed supplemental findings in support of the imposition of the challenged conditions. In those supplemental findings, the city noted several policies stated in the Grants Pass and Urbanizing Area Comprehensive Community Development Plan, including the general policy that service needs are determined based on the intensity of development and the policy that those who benefit from a development should pay for the costs of extending services to the development. The city also referenced specific implementing ordinances, including those requiring the availability of storm drainage and street improvements consistent with the comprehensive plan prior to the allowance of any partitioning.

In the supplemental findings, the city also described its rationale for concluding that those policies and ordinances require the specific conditions imposed in this case:

---

[1] Petitioners first sought review by the Land Use Board of Appeals. LUBA dismissed the case for lack of jurisdiction because the city's decision was not a "land use decision" under the law then in effect. *See* ORS 197.015(10) (*since amended by* Or Laws 1991, ch 817, § 1, and Or Laws 1993, ch 550, § 4).

"[T]he conditions imposed are justified because of the *potential development* of the partitioned tract. The tract to be partitioned is 3.85 acres and is zoned R-1-8, a low-density residential designation. Properties to the south, east and west of the tract are subdivided.

"The portion of the property adjacent to Beacon Drive (Parcel II) is proposed to be divided from the remainder of the tract (Parcel I). Parcel II is a 90 foot by 211.8 foot tract, and 18,990 square feet in size.

"* * * * *

"The *full development* of this 3.85 acre parcel would be considerable. Under the existing R-1-8 zoning, 20 homesites of 8,000 square feet could be situated on the tract. Even assuming loss of some developable land because of exactions * * *, 15 homes *could* be placed on Parcel I. With the two lot potential for Parcel II, the entire tract would likely house 17 large homesites. Moreover, the existing zoning allows some commercial and institutional uses for the land as well.

"The transportation impact of this amount of housing would be substantial. A single-family home typically generates 3200 vehicle trips per year, or 8.7 trips per day. Seventeen homes produces [*sic*] 149 trips per day." (Emphasis supplied.)

Petitioners objected to the supplemental findings, on the ground that they addressed issues outside the scope of those addressed in the original findings. The trial court overruled the objections.

After briefing and argument on the merits, the trial court issued findings and conclusions, in which it upheld the validity of the conditions imposed on petitioners. On appeal, petitioners assign error to the trial court's ruling on the objections to the supplemental findings and to the trial court's decision on the merits of the petition. We do not address petitioners' first assignment, because we conclude that, even if the supplemental findings were properly considered part of the record, the conditions do not survive constitutional scrutiny.

The validity of the conditions turns on the application of the Supreme Court's recent decision in *Dolan v. City of Tigard*, 512 US ___, 114 S Ct 2309, 129 L Ed 2d 304 (1994). In that case, Dolan applied to the City of Tigard to expand her

store and pave her parking lot. The City Planning Commission approved the application, but subject to conditions that included the dedication of land for a public greenway and for a pedestrian/bicycle pathway. Dolan challenged the constitutionality of the conditions, contending that they effected a taking of property without compensation in violation of the Fifth Amendment. The Oregon Supreme Court upheld the conditions and the United States Supreme Court reversed on certiorari. The Supreme Court's articulation of the appropriate test warrants careful scrutiny, and so we quote from its opinion at some length.

■　The Court began by referring to the long line of decisions generally describing the impact of the Takings Clause of the Fifth Amendment on the authority of state and local governments to engage in land use planning:

> "A land use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' *Agins v. Tiburon*, 447 US 255, 260, 100 S Ct 2138, 2141, 65 L Ed 2d 106 (1980)." *Dolan v. City of Tigard, supra*, 512 US at＿＿, 114 S Ct at 2316.

In those cases, the burden rests with the party challenging the regulation to show that it constitutes an arbitrary deprivation of property rights. 512 US at＿＿, 114 S Ct at 2320 n 8.

　　The Court then drew a distinction between that line of cases and cases involving the imposition of conditions on the approval of a land use permit:

> "The sort of land use regulations discussed in the cases just cited, however, differ in two relevant particulars from the present case. First, they involved essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel. Second, the conditions imposed were not simply a limitation on the use petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city. * * * Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the property sought has little

or no relationship to the benefit." 512 US at ___, 114 S Ct at 2316.

The Court then articulated the following test for determining whether the exaction of a condition is constitutional:

"[W]e must first determine whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city. If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development." 512 US at ___, 114 S Ct at 2317. (Citation omitted.)

The Court explained that the "required degree of connection" between the conditions and the impact of the proposed development is one of "rough proportionality," which it defined in these terms:

"No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." 512 US at ___, 114 S Ct at 2319. (Footnote omitted.)

■ In this case, petitioners argue that the imposition of the condition of dedicating extensive portions of their property for widening of city streets does not satisfy the rough proportionality requirement of *Dolan*. There is, they argue, absolutely no relationship between the impacts of their proposed development and the imposition of the dedication requirement.

The city offers two arguments in support of the validity of its conditions. First, it argues that, because the conditions are based on city ordinances, they are the "functional equivalent" of legislative decisions and, therefore, are not subject to the requirements of *Dolan*. According to the city, such legislative decisions are subject to minimal scrutiny; indeed, they are subject to a presumption of validity. Second, it argues that, even if *Dolan* applies, its findings are sufficient to satisfy the requirements of that decision. We are unpersuaded by either argument.

■ The city's first argument is based on a misunderstanding of *Dolan* and a mischaracterization of its own

actions. As the Supreme Court noted in *Dolan*, the presumption to which the city refers attaches only when a petitioner challenges the validity of a zoning ordinance or similar legislative or quasi-legislative enactment that is applied generally to all similarly situated properties. 512 US at ____, 114 S Ct at 2320 n 8. In this case, petitioners bring no such challenge. Instead, they challenge the city's decision to impose a particular set of conditions — dedication of up to 25 feet of streetfront property along the length and width of their parcel — in exchange for approval of their development application.

■ The city insists that, because the relevant ordinances *require* the imposition of such conditions, the decision to do so is, in reality, a legislative one. The city misses the point. Even if that were so, the character of the restriction remains the type that is subject to the analysis in *Dolan*. In drawing its distinction between the legislative land use decisions that are entitled to a presumption of validity and the exactions that are not, the Supreme Court noted that what triggers the heightened scrutiny of exactions is the fact that they are "not simply a limitation on the use" to which an owner may put his or her property, but rather a requirement that the owner deed portions of the property to the local government. 512 US at ____, 114 S Ct at 2316. That is precisely the nature of the exaction imposed by the city in this case.

The city's second argument similarly relies on a misreading of *Dolan* and an inaccurate characterization of its own decision. According to the city, even if *Dolan* applies, the conditions imposed are inoffensive to the constitution. The city argues that, because no one contests the legitimacy of the local government's interest in transportation planning, or because there is a sufficient "nexus" between the local government's interest and the imposition of the condition in this case, the only issue is whether there is the required degree of connection between the conditions and the impact of the proposed development. On that issue, the city argues, we exercise limited review to determine whether there is substantial evidence to support its findings. Because there is such evidence, the city concludes, it must prevail.

We need not address the city's argument about our limited scope of review, because, even if it is correct, the city cannot prevail. The only issue in dispute is, indeed, whether

there is the "required degree of connection" between the conditions the city has imposed "and the projected impact of the proposed development." *Dolan v. City of Tigard, supra,* 512 US at ____, 114 S Ct at 2317. In this case, however, the city's justification for the conditions is, in the words of the city's own supplemental findings, the impact of *"potential development* of the partitioned tract." In other words, the city imagined a worst-case scenario — assuming that petitioners would, at some undefined point in the future, attempt to develop their land to its full development potential of as many as 20 subdivided residential lots, further assuming that petitioners would obtain all the necessary permits and approvals — and on the basis of that scenario, it calculated the impacts of the development and tailored conditions to address them.

The problem with that approach is that *Dolan* requires that the exactions imposed be "related both in nature and extent to the impact of *the proposed development."* 512 US at ____, 114 S Ct at 2320. (Footnote omitted; emphasis supplied.) The proposed development in this case is the partitioning of a single lot into two lots and nothing more. There is absolutely nothing in the record to connect the dedication of a substantial portion of petitioners' land, for the purpose of widening city streets, with petitioners' limited application.

Even taking into account the city's data reflecting the number of vehicle trips per day that the city assumes each new household will generate, the fact that there is an increase of eight vehicle trips on Beacon Drive and Savage Street each day hardly justifies requiring petitioners to part with 20,000 square feet of their land without compensation. That does not comport with what the Supreme Court meant by "rough proportionality."

The city does not contest that petitioners' application is very limited. Relying on language from an earlier Supreme Court decision, *Nollan v. California Coastal Comm'n,* 483 US 825, 835, 107 S Ct 3141, 97 L Ed 2d 677 (1987), it insists that it is appropriate to evaluate the impacts of a proposed development "alone, or * * * in conjunction with other construction." That is what the Court said in *Nollan.* However, that language is not relevant to this case, in which there is no reference to actual "other construction."

There is only the city's *speculation* as to what other construction *could* take place at some time in the future. That is not what the Supreme Court was referring to in *Nollan*.

There is, in short, nothing in the record that provides evidence of a relationship between the conditions the city has imposed and the impact of petitioners' proposed development. The trial court erred, as a matter of law, in concluding otherwise.

Reversed and remanded.