Argued and submitted August 24, reversed and remanded in part with instructions; otherwise affirmed on petition and on cross-petition October 18, 1995, petition for review denied March 6, 1996 (322 Or 644)

William F. CLARK,
*Petitioner - Cross-Respondent,*

*v.*

CITY OF ALBANY,
a municipal corporation,
*Respondent - Cross-Petitioner.*

(LUBA 94-229; CA A89177)

904 P2d 185

Edward F. Schultz argued the cause for petitioner - cross-respondent. With him on the briefs was Weatherford, Thompson, Quick & Ashenfelter, P.C.

James V. B. Delapoer argued the cause for respondent - cross-petitioner. With him on the brief was Long, Delapoer, Healy & McCann, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of and the City of Albany cross-petitions from LUBA's remand of the city's limited land use decision approving and imposing conditions on petitioner's site plan for a fast food drive-in restaurant. The site plan review is an early stage in the application process and precedes the eventual decision on building permits and other final project approvals. The principal issues that both parties raise involve the consistency of the conditions imposed by the city with *Dolan v. City of Tigard*, 512 US ___, 114 S Ct 2309, 129 L Ed 2d 304 (1994). We affirm in part and reverse in part.

We take the facts, in part, from LUBA's opinion:

"Petitioner proposes to locate a fast food drive-in restaurant on property zoned Heavy Commercial. Spicer Road, a county road that runs east-west and is not improved to city standards, adjoins the property to the north and intersects the Santiam Highway at a point about 200 feet from the western boundary of the property. Fescue Street, which runs north-south, ends as a public right-of-way at a point about 400 feet south of the subject property. Fescue Street continues as a private easement to the west of the property. The city's master street plan shows Fescue Street as extending either through or near the property.

"Petitioner's site plan shows a strip 25 feet wide, running north-south along the western boundary of the subject property, denominated as part of the Fescue Street right-of-way. A 12-inch storm drain and a 12-inch water line run parallel to and south of Spicer Road. A 6-inch storm drain runs north-south through the subject property near the western edge of the Fescue Street right-of-way." (Footnote omitted.)

The city attached numerous conditions to its approval of the site plan, which were preceded with the general caveat:

"Unless otherwise noted, all conditions and requirements must be completed to the satisfaction of the city's representative *prior to final approval of the structure*." (Emphasis supplied.)

As will become clear in some of the specific contexts that we will discuss, there is a general difficulty in analyzing the conditions here in the light of *Dolan*. That case requires that, under the Takings Clause of the Fifth Amendment, a

governmental body must demonstrate a "rough proportionality" between certain conditions that it "exacts" and the "impacts" of the development that it approves subject to the conditions. However, in *Dolan* itself, the requirement was established and applied in a framework where the conditions and the proposed development had both assumed something akin to final definition. Here, conversely, what the city has granted amounts to a preliminary approval, and several of the disputed conditions are subject to future contingencies or are, by their terms, prerequisites to future phases of the application process rather than the one involved in the present proceeding. The comparison of an exaction and an impact is not easily made—and may not even be possible in some instances—when either or both have yet to assume final form and when the eventual final nature of one depends to some extent on the final form of the other. In addition to that procedural problem, the application of *Dolan* is further complicated here by the fact that the parties' arguments and LUBA's analysis reflect different views about what kinds of conditions are "exactions" that are subject to the test defined in *Dolan*.

The following seven conditions are the subject of dispute:

"4. Prior to issuance of building permits, design for street improvements for Spicer Road. The improvements shall be for an ultimate width of 36 feet, and shall extend from a point 150 feet east of the subject property east property line to the intersection of the Santiam Highway. The design section shall be sufficient for a minor collector street designation. Make design allowances for a commercial driveway intersecting Spicer Road at the current commercial driveway intersection.

"5. Prior to issuance of building permits, provide financial assurances for or construct improvements to Spicer Road. Improvements shall consist of a partial street, drainage, and minimum seven foot curb line sidewalk improvements with appropriate transitions to the east and west of the subject property. Depending on the condition and section of the existing roadway, an overlay may be required on portions of the roadway not being incorporated into the partial street improvement.

"10.   Prior to issuance of building permits, provide a method for making the 'future 25-foot Fescue right-of-way' area a 'non-driving area,' or provide an alternate plan meeting the approval of the City Engineer that would allow safe use of this area. As shown on the submitted drawing, this area is specifically not approved for use as a parking or driving area.

"11.   Prior to issuance of building permits, provide a storm drainage plan for the development and required roadway improvements. If it is proposed to ultimately route drainage to the ditch system along Interstate 5, the developer must provide calculations confirming that the existing ditch and pipe undercrossings are of adequate capacity and grade to accommodate the increased runoff, and that the State of Oregon Highway Department (ODOT) has approved the use of this system.

"12.   The 6-inch storm drain line shown on the submitted plan does not appear to be a public line and therefore cannot be used to route drainage from this site. In addition, the 12-inch line along Spicer Road will likely have to be reconstructed in conjunction with the required roadway improvements.

"13.   All required public storm drainage system improvements must be constructed, or financial assurances provided for their construction, prior to issuance of building permits.

"26.   The sidewalk adjacent to Spicer Road must be seven feet wide. This width may be reduced to six feet if the sidewalk is separated from the curb by a landscaped planter at least five feet wide. Parking lot must be constructed in conformance with Section 9.120(3) of the revised Albany Development Code. The Site Plan does not indicate perimeter curbing [ADC 9.120(6) revised] nor wheel bumpers for parking slots fronting sidewalks. [ADC 9.120(6) revised.] This requirement must be indicated on the plans submitted for Building Permits and must be met at the time of construction of the parking lot. (Note: If sidewalks are 7'6" wide, wheel bumpers are not required and the length of the space becomes 16'6".)" (Emphasis omitted.)

After the city entered its original order, it withdrew it and discussions between petitioner and city representatives took place. The discussions culminated in the issuance of an amended order, which deleted three conditions, other than the quoted ones, to which petitioner also objected. However, the city included the following paragraph, which the parties

refer to as a "supplemental note," as part of the amended decision:

> "This amendment responds to the applicant's request that the City remove [the three conditions in the] * * * Notice of Decision on this case. While the City is willing to remove these as conditions of approval, it is important that the applicant, and subsequent property owners, understand that there is an infrastructure study currently underway in the East I-5 area. Recommendations from the study will likely result in the subject property's being included in the benefit area of a local improvement district and later assessed, and that the current Spicer Road access to Highway 20 may close at some point in the future if the Oregon Department of Transportation determines this intersection has an unacceptable level of service."

Petitioner appealed to LUBA, contending that each of the seven conditions, by reason of its substance and/or the absence of support for it in the city's findings, was contrary to *Dolan*. He also asserted that the supplemental note was improperly included in the city's order.[1] LUBA agreed that conditions 4 and 5 constituted "exactions" and that the city's existing findings were inadequate to demonstrate "rough proportionality" between them and the proposed development's impacts with the specificity that *Dolan* requires.

LUBA rejected each of petitioner's other contentions. It held that he could not complain about the requirement of a nondriving area in condition 10, explaining that "[s]ince petitioner's own site plan shows the future right-of-way to be a non-driving area, we agree with the city there has been no exaction." LUBA also determined that no exaction subject to *Dolan* was embodied in condition 11. LUBA explained that that condition "simply requires petitioner to provide a plan to show petitioner will satisfy the city's storm drainage requirements." It reasoned further that the "condition ensures that a specific impact of petitioner's proposed development will be addressed prior to issuance of a permit." LUBA also held that conditions 12, 13 and 26 are not exactions, but amount to mere "advisory" admonitions "that the site plan must eventually include certain additional details."

---

[1] He made one further argument to LUBA, which he repeats to us. LUBA rejected it with little discussion. We also do not find it persuasive.

Finally, LUBA ruled that there was no legal basis to substantiate petitioner's objection to the city's inclusion of the supplemental note in its order.

■     Because the issues raised in the city's cross-petition will have some bearing on some of the issues raised by petitioner, we first turn to the cross-petition. The city contends that the *Dolan* analysis is inapplicable to conditions 4 and 5. According to the city, those conditions do not amount to "exactions," because they "merely [require] the developer to improve his own primary access frontage in accordance with the local government's standards," for the principal benefit of his own property and project rather than "to provide some general public benefit."

In our view, the city's argument confuses the question of whether the *Dolan* test is applicable with the question of whether the conditions pass the test. If, on remand, the city is able to make satisfactory findings that demonstrate that petitioner's project is the sole or principal beneficiary of the improvements that he is required to make, and that the requirements are responsive to impacts that the development will have, the city almost certainly would also succeed in demonstrating "rough proportionality."[2] However, neither that possible eventual success nor the city's current postulates change the fact that, on their face, conditions 4 and 5 do impose exactions that are subject to the *Dolan* analysis: They require petitioner, as a prerequisite to developing his property, to make road improvements on and extending beyond the affected property, and the improvements are to be available for some public use.

There are suggestions in the city's argument that the *Dolan* test should not apply to conditions, like these, that do not require a dedication or transfer of a property interest to the public or the body from which the developmental approval is sought. We implicitly concluded otherwise in *J.C. Reeves Corp. v. Clackamas County*, 131 Or App 615, 887 P2d 360

---

[2] We do not imply that, in order to survive scrutiny under *Dolan*, an exaction must be proportional only to developmental impacts that affect the applicant's property, exclusively or primarily. We do suggest that, when the impacts *are* so limited, as the city posits to be the case here, the "rough proportionality" test would be difficult to flunk. In a sense, the conditions would be benefits to, or necessities of, the development itself more than mitigations of the external effects of allowing it.

(1994), where we applied the *Dolan* test to developmental conditions analogous to conditions 4 and 5 here.

■■ We recognize, and will hold in other connections in this opinion, that not all conditions of approval come within the ambit of the *Dolan* test. However, the fact that *Dolan* itself involved conditions that required a dedication of property interests does not mean that it applies *only* to conditions of that kind. This case is not the appropriate one for universal line-drawing because, in our view, there is no relevant and meaningful distinction between conditions that require conveyances and conditions like the fourth and fifth ones here. For purposes of takings analysis, we see little difference between a requirement that a developer convey title to the part of the property that is to serve a public purpose, and a requirement that the developer himself make improvements on the affected and nearby property and make it available for the same purpose. The fact that the developer retains title in, or never acquires title to, the property that he is required to improve and make available to the public, does not make the requirement any the less a burden on his use and interest than corresponding requirements that happen also to entail memorialization in the deed records.

It is also immaterial to the analysis that conditions 4 and 5 are stated as prerequisites to obtaining building permits in the future rather than to the site plan approval that was immediately at issue. Unlike the situation in *Schultz v. City of Grants Pass*, 131 Or App 220, 884 P2d 569 (1994), these conditions were not attached to a *potential* development of the property that goes beyond the scope of what the present application proposes; rather, they serve as conditions precedent to approval at the next stage of the review process for the same application and the same proposed development.

As will be discussed, some of the other conditions at issue here are not in a posture that lends itself to adjudication at this time. The phased application process makes them too contingent on later events for present evaluation under the *Dolan* standard to be possible and, in some instances, for us to ascertain whether the condition does or eventually will amount to an "exaction" that is subject to the standard. Even *rough* proportionality is difficult to identify when the eventual nature of both the condition and the impact are

unknown.[3] However, that is not the case with conditions 4 and 5. They require present or proximate future action of a reasonably defined nature in order to advance to the next stage of the process to gain approval of a project whose essential contours are also defined by the site plan under review. We agree with LUBA that conditions 4 and 5 are subject to *Dolan* and that the city has not made adequate findings to show that the conditions satisfy its test.

For the foregoing reasons, we reject the city's first assignment of error, and we reject its other assignment without discussion. The city shows no basis for reversal, and we affirm on the cross-petition.

■ We now turn to the petition. Petitioner first argues that LUBA erred in its disposition of his challenge to condition 10. LUBA reasoned that, because petitioner's site plan itself designated the on-site area in question as one that was to be traffic-free, the corresponding condition in the city's order was not an exaction. Petitioner maintains that he was required by a city ordinance provision to designate the property as he did on the site plan, that his application would have been denied had he not done so and, therefore, that he had no meaningful opportunity to challenge the ordinance provision or the condition until the city imposed the latter. Hence, he contends that we should not sanction the Catch-22 position that he believes LUBA's approach puts him in, and which will presumably be applied to future proponents as well, of conceding the condition or risking the outright denial of the application.

We expressly do not decide the issue that petitioner raises, because LUBA's disposition of condition 10 can be affirmed on different grounds. We conclude that the condition is not an exaction; it is essentially a traffic regulation. Regulations of that kind are not "exactions" and are not subject to the *Dolan* test, as distinct from the tests for pure "regulatory takings." *See* 512 US at ___, 129 L Ed 2d at 316.

---

[3] We emphasize that that does not mean that the final conditions will *never* be reviewable for consistency with *Dolan*. The fluidity of the conditions in their present form results in part from the fact that later reviewable decisions concerning them remain to be made.

Condition 10 is a simple limitation on use, and petitioner makes no *regulatory* taking argument.

■        Petitioner next challenges LUBA's holding as to condition 11. We agree generally with LUBA's conclusion that that condition, too, is not an exaction, but is simply a requirement that petitioner "provide a plan to show [that he] will satisfy the city's storm drainage requirements." However, we add an important caveat to that analysis, *i.e.*, the word "now." The way in which the city ultimately implements the condition at the time later approvals are sought *could* alter the nature of the condition and affect the relationship of *Dolan* to it.[4] We reach the same conclusion — with the same caveat — in connection with petitioner's contention that LUBA erred in holding that conditions 12 and 13 are "advisory" and are not exactions.

■        However, we do not agree with LUBA that the same is true of condition 26. As we read the condition, it is akin to conditions 4 and 5 in stating present requirements that are necessary precursors to future actions. Stated differently, condition 26 appears to require petitioner to take definitive action of a very specific nature on and affecting his property before the next stage in the process — and the next appealable event — occurs. It is immaterial that the requirements need only be "indicated" on the plans submitted for building permits, but not "met" until construction occurs. The clear import is that the next steps in the approval process cannot be taken unless and until the precisely-defined requirements of condition 26 are incorporated into the developmental scheme. Accordingly, we remand to LUBA to address the merits of petitioner's argument that that condition violates *Dolan*.

---

[4] We note generally that some of the conditions which are not disturbed directly by LUBA's opinion or our opinion could also be affected in ways that require further definition or refinement in light of the findings that the city makes on remand concerning conditions 4 and 5. Those changes could also affect whether and how *Dolan* might apply to the various conditions.

Petitioner's assignment of error regarding condition 11 assails the adequacy of the city's findings, in addition to challenging LUBA's conclusion according to its own terms. However, as we understand it, the challenge to the findings relates only to whether they satisfy *Dolan*. The argument does not appear to be that, independently of the *Dolan* question, the findings are inadequate to support the city's conclusion or the imposition of the condition. Because we conclude that the condition is not an exaction — at least as of now — the argument regarding the findings requires no separate resolution.

■ In his final assignment, petitioner contends that LUBA erred in rejecting his argument concerning the supplemental note. He contends that there is no evidentiary or factual basis to support the substance of the note and, more broadly, that the contents of the note — relating to the infrastructure study, notice to subsequent owners, the possible creation of a local improvement district and other ancillary future events — have absolutely nothing to do with this proceeding. Petitioner suggests that the effect of the supplemental note is to introduce a total irrelevancy that can seriously impede his ability to obtain project funding.

The city answers, *inter alia*, that the note serves the purpose of putting petitioner "and others on notice of certain legitimate concerns and likely expenses." The city concludes:

> "Local governments should be encouraged to advise the development community of potential concerns wherever they can reasonably be anticipated. Indeed, city planners are frequently criticized by the development community for not using their 'crystal balls' to forecast all of the obstacles which the developer will ultimately encounter. It would be a terrible irony if this court were now to hold that the planners must stay silent and assist a property owner in concealing future expenses and pitfalls from his subsequent purchasers and his lenders. No appellate court has ever taken this position and public policy would clearly mitigate [*sic*] against such actions."

LUBA concluded that petitioner cited no "legal basis for his objection" to the city's inclusion of the supplemental note in its order. As we understand his argument, however, petitioner's position is that there is no legal basis *for* the city's action. According to him, the supplemental note is simply irrelevant to anything in the site plan or the city's review of the proposed project. Although we agree with the city that its planners and other personnel should exercise candor in their dealings with the public, we do not agree that that laudable objective necessitates — or that quasi-judicial procedures permit — the use of decisional orders as a vehicle for announcing speculative facts and predictions about future events that have no direct connection to the issues or the decision in the case. LUBA erred by sustaining the supplemental note.

On petition, reversed and remanded with instructions to reconsider condition 26 and to direct city to delete supplemental note from order; otherwise affirmed on petition and cross-petition.