Argued on remand from the United States Supreme Court July 19, reversed and remanded November 15, 1995

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Respondent,*

*v.*

Floyd Thomas ALTIMUS
and Janice M. Church,
*Appellants,*

*and*

Russell OLSON,
*Defendant.*

(CV 89-137; CA A66578)

905 P2d 258

Charles F. Hudson argued the cause for appellants. With him on the original briefs were Robert E. Maloney, Jr., and Lane Powell Spears Lubersky. With him on the supplemental briefs were Robert E. Maloney, Jr., George W. Mead, Jr., and Lane Powell Spears Lubersky.

Jas. Adams argued the cause for respondent. With him on the original brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General. With him on the supplemental brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

The defendant property owners' appeal in this condemnation action is before us on remand from the United States Supreme Court. *Altimus v. Oregon*, 513 US ___, 115 S Ct 44, 130 L Ed 2d 6 (1994). In our earlier decision, we affirmed the trial court's judgment awarding defendants compensation of $7,000 from the state for the latter's taking of the property for use in connection with a highway project. *Dept. of Transportation v. Altimus*, 124 Or App 61, 862 P2d 109 (1993), *rev den* 318 Or 458 (1994). We rejected defendants' contentions, *inter alia*, that the court erred by admitting certain evidence and by refusing a requested instruction that the jury could not consider evidence that part of the property would be subject to a dedication requirement if it were to be annexed to the City of McMinnville and rezoned from its present agricultural classification to light industrial, thereby permitting its highest and best use. The Supreme Court directed us to reconsider our disposition in the light of its intervening decision in *Dolan v. City of Tigard*, 512 US ___, 114 S Ct 2309, 129 L Ed 2d 304 (1994).[1] On remand, we reverse.

We take the facts from our first opinion:

"Defendants owned a 13-acre parcel of undeveloped farmland near the City of McMinnville. The property, located in the county's 'exclusive farm use-40' zone, is bordered on one side by State Highway 18. Plaintiff condemned approximately two acres of defendants' land for the purpose of widening the highway and constructing a parallel frontage road. The only issue at trial was the fair market value of the two acres.

"Defendants presented evidence that the property is within McMinnville's urban growth boundary and would be within the city's designated 'light industrial' zone if they applied for both annexation and a zone change to bring it into compliance with McMinnville's comprehensive plan. Expert witnesses for both sides agreed that the highest and best use of the property is limited light industrial. Defendants' witnesses testified that, if re-zoned for that type of industrial use, the two-acre parcel would be worth between $65,000 and

---

[1] After the Supreme Court remanded the case, the parties filed supplemental briefs and presented further oral argument.

$86,000. A witness for plaintiff testified that McMinnville had a policy that allowed, but did not require, the city to force property owners to dedicate a portion of their land to road improvement projects upon annexation, in return for granting the zone change. Another witness, Hughes, testified that the property at issue was worth $5,300. Hughes based that figure on his opinion that one of the two acres had only agricultural value, because he assumed that McMinnville would condition any zone change on defendants' dedication of one acre for the highway project." *Altimus*, 124 Or App at 63.

Hughes' testimony was based on several factors, including a number of earlier property dedications that the city had required as conditions of zone changes. Although those dedication requirements were imposed through what the city labeled as "ordinances," they were not a reflection of a stated or uniformly applied legislative policy, but were site-specific and adjudicative in character, varying in extent from case to case.[2] On the basis of that history of "exactions" and other data, Hughes derived the conclusion concerning the extent of the "hypothetical dedication" that would have been required of defendants as the condition of the hypothetical zone change.

Defendants assigned error to the admission of Hughes' testimony that they "could be required to deed to plaintiff a portion of the property being taken in order to secure a zone change upon annexation to McMinnville." *Altimus*, 124 Or App at 63-64.[3] Defendants made two points: First, the evidence was "speculative" and therefore irrelevant, because the city's dedication "policy" was neither mandatory nor universally applied, and its potential application to

[2] The series of procedural events by which the ordinances were received in evidence and became considerations in the case is complicated. There is no mandated order of proof and no burden of proof regarding compensation in condemnation actions. Defendants elected to put on their case first, and may have made the initial evidentiary use of the ordinances. However, against the procedural background, we do not consider that that fact precludes defendants from challenging the evidentiary use that the state made of the ordinances.

[3] In our first decision, the assignment of error concerning the refusal to give the requested instruction presented the same questions as the assignment regarding the admission of the testimony. *Altimus*, 124 Or App at 66 n 3. The appropriate instruction that follows from our present decision will depend on the evidence and other aspects of the proceedings in the circuit court on remand, as well as on the refinements in the law wrought by *Dolan*.

any zone change for this property was only a "possibility"; and, second, any application of a dedication requirement to the property would violate the Takings Clauses of the federal and state constitutions because, *inter alia*, a "rational nexus" between such a requirement and a zone change was lacking.

We rejected both the evidentiary and constitutional aspects of defendants' arguments. We said, in connection with the first:

"In this case, the evidence established that the highest and best use of defendants' property was light industrial. To secure a change from agricultural to industrial zoning, defendants acknowledged that first they would need to seek annexation by McMinnville. At that time, they would be subject to the city's policy of forced dedication. Accordingly, evidence of the existence of the policy was relevant. The fact that the city might choose not to require dedication by defendants affects only the weight of plaintiff's evidence, not its relevancy. Having sought to convince the jury that the value of their land would be greater *if* they were annexed by the city and *if* they secured the desired zone change, defendants cannot complain that evidence of the city's dedication policy, which could be applied to defendants' property upon annexation, was 'too speculative.' The trial court did not err in declining to exclude evidence of the dedication policy. Neither did it err in allowing expert testimony as to the policy's effect on the fair market value of the property." *Altimus*, 124 Or App at 65-66 (emphasis in original; footnotes and citation omitted).

Relying on *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), and *Dept. of Trans. v. Lundberg*, 312 Or 568, 825 P2d 641, *cert den* 506 US 975, 113 S Ct 467 (1992), we also rejected the constitutional argument. In *Lundberg*, also a condemnation action, the Oregon Supreme Court considered the admissibility of evidence which, like the challenged evidence here, related to a condition that might have been imposed if the property owner had changed its use to achieve a higher value. The court held that the evidence was relevant and that its admission did not offend the Fifth Amendment Takings Clause as construed in *Nollan*. In reaching the latter conclusion, the court reasoned that, as a *general* proposition, the local sidewalk dedication requirement in *Lundberg* bore an "essential nexus" to the

"development of property abutting public streets." 312 Or at 577-78.

Similarly, we concluded in our earlier opinion in this case that

"the challenged policy ensures that the specified urban services are provided to properties that are annexed to the city, and it allows the city to require applicants to absorb some of the costs associated with the provisions of those services [*inter alia*] by dedicating land * * *.

"* * * * *

"[T]he requisite nexus exists between the increased need for proper traffic circulation created by the proposed industrial development and the dedication of a portion of defendants' land to a highway widening project that would obviate the need for the city to build a frontage road. *See Dolan v. City of Tigard*, 317 Or 110, 120-21, 854 P2d 437 (1993)." *Altimus*, 124 Or App at 67-68.

Defendants assert that *Dolan* alters the picture, because it requires an inquiry into the extent or degree of the connection between a developmental condition and the impact of the development to which it is attached; *Nollan*, according to defendant, had posited that such a connection must exist, but had left unresolved both the question of degree and the test for answering that question, which was later defined in *Dolan* as one of "rough proportionality." Defendants conclude:

"*Nollan's* holding was arguably limited to a requirement that the dedication imposed have some logical relationship to the sort of public concerns that might be affected by the development of the property. Under this interpretation of *Nollan*, and the courts' traditional deference to governmental regulation of land use, judicial scrutiny of the extent of the exaction proposed would not be required.

"Because it explicitly requires judicial scrutiny of the 'degree' of the exaction, 129 L Ed 2d at 318, *Dolan* now mandates a different result. Here, as in *Dolan*, the dedications at issue reflected individual adjudications, by ordinances specific to particular properties, which required the owners to deed a portion of their land. In each case, the amount of land exacted was determined by the needs of the state's project and *not* by any 'individualized determination' based upon the impact of proposed development. Indeed, the

hypothetical dedication requirement applied to defendants' property predicted conditions to be imposed simply in order to obtain a change in *zoning*, and did not involve *any* proposed development of the property.

"Such exactions cannot satisfy the constitutional standard of rough proportionality established by *Dolan*. And, to the extent that they are unconstitutional, such exactions cannot be competent evidence in a jury trial to determine just compensation." (Emphasis defendants.)

Defendants also rely on our decision in *Schultz v. City of Grants Pass*, 131 Or App 220, 884 P2d 569 (1994). We concluded there, *inter alia*, that *Dolan* did not allow the city to base developmental conditions on impacts that might result from the ultimate *potential* intensive development of the property in question. Rather, the "exactions" had to be related in their nature and extent to the impacts of the permit or use for which the landowners in fact applied or to which they actually proposed to put the property, instead of to the impacts of a more intensive but abstract level of development that the property might later reach. Defendants attempt to equate the situation here to the one in *Schultz* by asserting that a dedication condition here could bear no direct relationship to the impact of rezoning, because rezoning, in itself, can have no impacts independently of the actual establishment of the uses that it might make permissible. Here, of course, no industrial uses were applied for or undertaken.

This case presents a variation of the analytical problems described in *Clark v. City of Albany* 137 Or App 293, 904 P2d 185 (1995). Both *Dolan* and *Schultz* dealt with actual conditions that the cities had attached to defined land uses that they had actually approved. Hence, the factors on both sides of the "rough proportionality" equation were known. Here, as with some of the conditions in *Clark*, there has been no concrete final decision that approves an actual development with actual identifiable impacts and conditions designed to mitigate those effects; and, beyond the situation in *Clark*, the problem of comparing impacts and exactions here is not simply due to contingencies that result from a lack of final definition. Both the zone change and the conditions that might be attached to it are purely hypothetical, and cannot become realities during the course of this action, if ever.

However, that problem and that posture of the case are intrinsic to defendants' theory of the case: They assert that the highest and best use of their property is one that its current zoning does not allow and, consequently, that they are entitled to just compensation based on a use that could be conducted if the zoning were changed. They clearly may assert that theory, but it is equally clear that the property's fair market value can be affected by conditions or other diminishing factors that may follow from any zone change or change in use that may be allowed.

Arguably — although defendants do not so argue — *Dolan* can be read as prohibiting the use of any evidence of hypothetical conditions, without also limiting evidence of hypothetical development. *Dolan* places a "burden of justification," and a highly particularized one, on governmental bodies to demonstrate "rough proportionality" between the conditions they establish and the impacts of development. 512 US at ___ n 6, 129 L Ed 2d at 316 n 6. If both the exactions and the impacts are hypothetical and, therefore, undefined and undefinable, proportionality between them would not be demonstrable.

■        However, we do not read *Dolan* that broadly. As noted above, *Dolan* was decided in a context where the conditions imposed and the developmental impacts approved by the governmental body were "real," final and defined. We do not think that *Dolan* requires the exclusion of all evidence of hypothetical conditions in circumstances such as this, where it is relevant and responsive to evidence of potential developmental impacts and where the degree of proportionality is necessarily as "speculative" as is the potential nature and existence of the hypothetical impacts and exactions themselves. To that extent, *Dolan* leaves the answers in our earlier opinion unchanged: evidence of hypothetical conditions and uses and the potential nature of both is not inadmissible *per se* on relevance or constitutional grounds.

For similar reasons, defendants' reliance on *Schultz* is misplaced. Unlike the situation there, no conditions *have* been attached here to a potential use instead of a real one; rather, the issue is whether and what conditions *would* have been imposed if defendants had chosen to pursue their

hypothesis of a higher and better use to the point that it became a real one.

■■     What *Dolan does* change in this context, analogously to its effect in conventional situations involving actual developments and conditions, is that the evidence of the hypothetical conditions must have a site-specific focus and it must be premised on as much of a showing of rough proportionality as can be made between the conditions and the hypothetical developments. The fact that the conditions and developments are hypothetical and nonexistent does not mean that the proportionality analysis cannot be applied to them. As in other situations that call for expert testimony, opinions can be formulated on the basis of assumptions and hypotheses. Additionally, *Dolan* places the burden on the government to make the showing of rough proportionality.

■     It is arguable that we could now apply the rough proportionality test, which is ultimately legal in nature, to Hughes' testimony and the underlying evidence and assumptions on which it was based. However, our doing so would serve little purpose, because the problem with the case at this stage is fundamental and pervasive: because the case was tried before *Dolan* was decided, the parties and the court did not and could not have adhered to or applied the rough proportionality test in their evidentiary presentations, admissibility determinations, or instructions about how the evidence should be weighed.

The significance of that point can best be illustrated by references to a parallel problem in the Oregon Supreme Court's and our pre-*Dolan* analyses. Its reasoning in *Lundberg* and ours in our earlier opinion in this case emphasized the *general* relationship between conditions of the kinds in question and developments and impacts of the general kinds involved. Conversely, *Dolan* emphasizes specificity of two kinds that *Lundberg* and our opinion did not: first, in the comparison of *particular* developments and conditions rather than *kinds* of developments and conditions; and, second, in determining the permissible extent of the condition by reference to what the particular impacts of the development can necessitate or justify. Like the Oregon Supreme Court and this court, the evidence here in general, and aspects of Hughes' testimony in particular, did not anticipate *Dolan*.

In view of the comprehensive nature of the problems, a remand is necessary, without need for more specific discussion of the evidentiary errors that defendants assert. Moreover, a discussion of those assertions would also be unproductive, because there is no reason to assume that, to the extent defendants' contentions have merit, the foundation for and substance of the evidence will remain in the same posture on remand as the one in which they come to us now. Indeed, the opposite is a far greater likelihood.

Reversed and remanded.