Argued and submitted November 2, reversed and remanded with instructions in
part; otherwise affirmed December 14, 1994

## J.C. REEVES CORPORATION,
*Petitioner,*

*v.*

## CLACKAMAS COUNTY,
*Respondent.*

### (LUBA No. 94-027; CA A84694)

887 P2d 360

William C. Cox argued the cause and filed the brief for petitioner.

Michael E. Judd, Chief Assistant County Counsel, argued the cause for respondent. With him on the brief was Clackamas County Counsel.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of LUBA's affirmance of the Clackamas County hearings officer's decision approving, but imposing conditions on, petitioner's application to develop a 21-lot residential subdivision. We affirm in part and reverse in part.

We take the relevant facts from LUBA's opinion:

"The subject property is approximately 4.9 acres in size and is zoned Low Density Residential (R-8.5). The subject property is essentially undeveloped and is located within the Portland Metropolitan Area Urban Growth Boundary. The proposed subdivision is a permitted use in the R-8.5 zoning district. The subject property is located in an area developed with single family residences.

"To the east of the subject property is S.E. 122nd Avenue, to the northwest is an existing residential subdivision. An undeveloped 3.97 acre parcel, Tax Lot 301, adjoins the southern border of the subject property. In addition, S.E. 119th Drive currently ends at the subject property's northern boundary. Access to the proposed lots will be provided by a new east-west street (Arthur's Court) along the southern border of the subject property, via S.E. 119th Drive, which will be extended to the southern border of the subject property.

"The county planning department recommended denial of the proposal. After a public hearing, the hearings officer approved the proposal with several conditions. Three of those conditions are the subject of this appeal and require (1) elimination of a one-foot 'spite strip' on the proposed subdivision plat separating Arthur's Court from Tax Lot 301, (2) construction of certain street improvements along the portion of S.E. 122nd Avenue abutting the subject property, and (3) that no roads be constructed within a wetland located on the subject property. Petitioner requested a hearing on the conditions of approval applied to the proposed development. * * *"

The only arguments that petitioner advances which require discussion are that the first and second of the conditions described by LUBA violate the Takings Clause of the Fifth Amendment, because they are not—or were not shown by the county's findings to be—consistent with the standards that the United States Supreme Court articulated in *Dolan v.*

*City of Tigard,* ___ US ___, 114 S Ct 2309, 129 L Ed 2d 304 (1994). In that case, decided after both the county's and LUBA's decisions here, the Supreme Court stated the applicable test for determining whether conditions on development are sufficiently related to the impacts of the development to survive a challenge under the Fifth Amendment. The Court said:

> "We think the 'reasonable relationship' test adopted by a majority of the state courts is closer to the federal constitutional norm than either of those previously discussed. But we do not adopt it as such, partly because the term 'reasonable relationship' seems confusingly similar to the term 'rational basis' which describes the minimal level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment. We think a term such as 'rough proportionality' best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." ___ US at ___, 129 L Ed 2d at 320. (Footnote omitted.)

In *Dolan v. City of Tigard,* 317 Or 110, 854 P2d 437 (1993), the Oregon Supreme Court had placed this state among the majority that had applied the "reasonable relationship" test before the United States Supreme Court replaced it with the "rough proportionality" standard in its *Dolan* opinion. That opinion also expressed another concept, not reflected in the state court's decision, that the "burden" of showing compliance with the applicable Fifth Amendment standard "properly rests" on the governmental body that has "made an adjudicative decision" to place conditions on the approval of a permit for the development of particular property. ___ US at ___ n 8, 129 L Ed 2d at 320 n 8.

In addition to the legal standard and the allocation of the burden, *Dolan* has a third significant feature: It required considerable particularity in local government findings that are aimed at showing the relationship between a developmental condition and the impacts of the development. In concluding that Tigard's findings failed to show the requisite connection between the expanded commercial operations and the city's requirement that the applicant dedicate a pedestrian/bicycle pathway, the Court explained:

"With respect to the pedestrian/bicycle pathway, we have no doubt that the city was correct in finding that the larger retail sales facility proposed by petitioner will increase traffic on the streets of the Central Business District. The city estimates that the proposed development would generate roughly 435 additional trips per day. Dedications for streets, sidewalks, and other public ways are generally reasonable exactions to avoid excessive congestion from a proposed property use. But on the record before us, the city has not met its burden of demonstrating that the additional number of vehicle and bicycle trips generated by the petitioner's development reasonably relate to the city's requirement for a dedication of the pedestrian/bicycle pathway easement. The city simply found that the creation of the pathway 'could offset some of the traffic demand … and lessen the increase in traffic congestion.' " ___ US at ___, 129 L Ed 2d at 322-23. (Footnotes omitted.)

Here, the county argues that, notwithstanding the United States Supreme Court's intervening decision in *Dolan*, we should affirm its and LUBA's decisions rather than remanding them for reconsideration. In its opinion on remand in *Dolan*, the Oregon Supreme Court remanded the case to the City of Tigard for further proceedings. However, we understand that disposition to have been based on the court's understanding that the United States Supreme Court had held that the city's "findings supporting the conditions did not meet the constitutional requirement of demonstrating 'rough proportionality' between those conditions and the nature and extent of the impact of the proposed development." *Dolan v. City of Tigard*, 319 Or 567, 569, 877 P2d 1201 (1994).

This case differs, in that no tribunal has yet held that the county's findings supporting its conditions are insufficient to show the necessary relationship. At the same time, however, the fact that the applicable legal standard was changed after the county and LUBA made their decisions could arguably be a basis for concluding that one or both of them should reevaluate their determinations in the light of the new standard. Remand for such reconsideration may be the appropriate course in many cases that reach us in a similar procedural posture. *See Schultz v. City of Grants Pass*, 131 Or App 220, 884 P2d 569 (1994) (holding that existing city findings did *not* satisfy the legal test of *Dolan*, and remanding).

■ We nevertheless decline to hold that there can be no circumstances in which conditions and supporting findings promulgated before *Dolan* was decided may be affirmed under the *Dolan* criteria by LUBA and us, without a remand for additional local proceedings. The Supreme Court strongly indicated in *Dolan* that it did not view the new "rough proportionality" test to be a radical departure from the "reasonable relationship" standard. Further, the new standard is a legal one, and the Court's opinion articulates it sufficiently to make it capable of application by an appellate court in evaluating whether local findings satisfy the test, regardless of whether the local government in fact applied it. Moreover, although the court spoke in terms of a "burden" resting on the body imposing the conditions rather than on the applicant, the requirements for findings under Oregon's land use decisional scheme may often amount to the practical equivalent of a burden of articulation on local bodies that does not differ materially from what *Dolan* requires.

The greatest obstacle that *Dolan* poses to the affirmability of pre-existing local findings inheres in the specificity that it requires. As this case illustrates, the detailed analysis of traffic and other phenomena, and of the relationship of a proposed development to them, may be unlikely to appear in local orders that predated *Dolan*. However, that is not a basis for a *per se* rule requiring a remand in every case, although it obviously can require remands in particular cases. In sum, where we can say that local findings are adequate under the *Dolan* formulation, although they preceded the *Dolan* decision, no purpose would be served by a remand to LUBA or the local government. We consider the challenged findings and conditions here in that light.

Petitioner contends, *inter alia*, that the county's findings do not support the imposition of the county's conditions concerning improvements on S.E. 122nd Avenue. In his original order, the hearings officer made these findings on that question:

> "Subsection 1007.03(A) provides that right-of-way dedication and road improvements shall be required of all new developments and subdivisions as deemed necessary by DTD [The County Transportation Department]. The revised preliminary plat includes the right-of-way dedication determined

necessary by DTD. Conditions of approval will require that all roadways are improved according to their classification and the most recent standards adopted by the Board of County Commissioners. No deviation from those standards is requested.

"Conditions of approval #15 and #20 require frontage improvements on 122nd Avenue, as required by subsections 1007.03(C) and 1007.03(F) [of the zoning ordinance]. The applicant objects to the requirement that it be responsible for the entire cost of those improvements, arguing, as the Hearings Officer understands it, that there is not a sufficient nexus between the impact of this development and the improvements requested. The applicant's argument is devoid of merit. The applicant will be required to provide some surfacing, storm sewer, curb and sidewalk along the property's frontage with 122nd Avenue. The subject property, because of its unusual narrow width, has only 208 feet of frontage on 122nd Avenue. Each of the residents of the 21 residential lots to be constructed will access the subject property by 122nd Avenue. Pedestrians going to and from the subject development will use the sidewalks to be constructed as part of a continuous pedestrian way along 122nd Avenue. The storm sewer to be installed will benefit the entire development, but particularly the three lots backing onto 122nd Avenue. Were it not for the County's policy of avoiding, to the extent possible, additional intersections on urban arterials such as 122nd Avenue, access would likely be provided for each lot directly onto 122nd Avenue. Because of the effort to improve traffic flow for all the users of 122nd Avenue, including the residents of this development, access is taken via 119th Drive to 122nd Avenue."

The hearings officer expanded upon those findings in his order denying petitioner's request for a rehearing:

"The Hearings Officer also notes that the applicant requests a rehearing on the condition of approval which requires that the applicant be responsible for the cost of improvements to the road frontage of the subject property on 122nd Avenue. The applicant argues that the vehicle use expected to be generated by the development on the subject property is but a small fraction of the total vehicular use on 122nd Avenue, an arterial, and that therefore the applicant should be required to pay for road improvements only in proportion to the extent [of] the impact of this development against the arterial's total usage. This condition is required by the ZDO [zoning ordinance]. Furthermore, the applicant

is not being required to make any off-site improvements to accommodate the traffic generated by the 21 lots in this development. It is reasonable to require that the property frontage be improved to arterial standards, as required by the ZDO.''

Petitioner argues that the county

"must establish that the extent of the improvements on S.E. 122nd required of Petitioner is roughly proportionate to the impact of traffic on S.E. 122nd generated by the proposed subdivision. There are no findings addressing that issue nor is there substantial evidence in the record to reflect any analysis of the relationship between the impact of petitioner's 210 vehicle trips per day development and the total cost of the improvements to S.E. 122nd exacted from Petitioner. Petitioner entered evidence into the record that the amount of vehicular trips per day that could be attributed to the proposed project is only 2.6% of the total traffic planned to use S.E. 122nd * * *. The County did not refute that evidence. As such it is logical to conclude that the Petitioner's share of the improvements to S.E. 122nd should be only 2.6% of the cost of those improvements."

■ Petitioner *describes* the improvements that it is required to make as "off-site." However, it does not assign error to any ruling by LUBA relating to the evidentiary sufficiency for the hearings officer's contrary finding, and it is not clear from its argument whether petitioner's disagreement is factual or legal. What is clear is that petitioner's argument rests on the premise that the permissibility of the condition is to be measured by a formula that compares the incremental traffic from the subdivision with the volume of traffic that travels on a far more extensive segment of the road. We agree with the hearings officer that, instead of the one petitioner proposes, the appropriate comparison is between the traffic and other effects of the subdivision and the subdivision frontage improvements that the county has required.

The difficulty is that the county's findings do not make the comparison at all, or at least not with the specificity that *Dolan* requires. They simply posit the relationship between subdivision-generated traffic and the need for the improvements. Also, the county relies on the fact that some of the improvements are required by its zoning ordinance. As we

said in *Schultz v. City of Grants Pass, supra,* however, "the character of the [condition] remains the type that is subject to the analysis in *Dolan,*" 131 Or App at 227, whether it is legislatively required or a case-specific formulation. The nature, not the source, of the imposition is what matters.[1] A remand to the county is necessary for further proceedings regarding the required improvements on S.E. 122nd Avenue.

Petitioner next contends that the condition that the development commence on the southern property line, and that the one-foot strip be eliminated, is incompatible with the *Dolan* test. The hearings officer found:

"Conditions of approval will require that the proposed 1-foot strip of land between the east-west road to be constructed and the southerly property line be eliminated, and the road dedicated [to] the property line. It is evident that the applicant's proposed design is an attempt to require that the property adjacent to the south contribute to the cost of the road construction. While that effort is understandable, it cannot be justified under the ZDO. DTD has determined that it is necessary to dedicate the road to the property line to provide access to the property to the south. DTD's reasoning is that the property to the south is too narrow to develop lots and provide for an additional east-west roadway, and the property will require access to this road when development occurs. DTD's analysis appears to be correct. The condition of approval deleting this 11-foot [sic] spite strip is authorized by subsections 1014.03(D), 1007.03(A) and 1007.03(F)(1)."

We assume for purposes of this case, as the parties do, that the "exactions" versus "impacts" analysis of *Dolan* and related cases have some application to this condition, although we do not decide whether that assumption is correct. Little could seem clearer than that the location of a 21-lot subdivision with an internal roadway can have profound impacts on access and traffic. *See Pennell v. San Jose,* 485 US 1, 20, 108 S Ct 849, 99 L Ed 2d 1 (1985) (separate opinion of Scalia, J.). Here, the subdivision will necessitate the placement of a new street in proximity to the southerly property, as

---

[1] Our conclusion is not at odds with the Supreme Court's differentiation between adjudicative conditions on particular properties and generally applicable legislative regulations on uses. ___ US at ___ n 8, 129 L Ed 2d at 320 n 8. A condition on the development of particular property is not converted into something other than that by reason of legislation that requires it to be imposed.

well as the extension of an existing street to intersect with the new one. The hearings officer's findings are amply sufficient to demonstrate the requisite proportionality between the impact of the subdivision and the condition that the strip be eliminated.[2] The condition is an appropriate device for providing the adjacent property with the access that the proposed development would otherwise eliminate or impair.

Petitioner does not directly argue otherwise, but contends that the effect of the condition is to benefit the adjoining owner at petitioner's expense. According to petitioner, the expense should be borne or shared by its neighbor. As LUBA said, however, the "financial advantage to the owner of Tax Lot 301 is irrelevant to the taking analysis." That statement remains correct after *Dolan*, at least in these circumstances, where petitioner's proposed use of its property is what will cause the access problem on the adjoining property. The findings regarding the strip are also specific enough to satisfy *Dolan*. In this connection, it is the *fact* of the strip's presence that threatens access, and no questions of level or intensity remain to be resolved.

In *Schultz v. City of Grants Pass, supra,* we concluded that it was impermissible under *Dolan* for the city to impose conditions that were linked to potential intensive future uses of property rather than to the more limited proposed use for which the owner was currently applying. Although part of the hearings officer's rationale for the condition here was based on the future development of the adjoining property, this case is not analogous to that aspect of *Schultz*. The present and future effects on access to the neighboring property that were the basis for the condition are the result of *this* proposed development of petitioner's property. Unlike the situation in *Schultz*, no further applications or development, with the concomitant opportunity for the county to consider further developmental conditions, need to occur or be presented in order for the proposed development to have the impacts on access that the required elimination of the strip is aimed at preventing. We conclude that, unlike the conditions requiring improvements on S.E. 122nd Avenue,

---

[2] Petitioner does not appear to argue that requiring it to afford access from the adjoining property is a taking, independently of the requirement that it dedicate the strip.

the condition of eliminating the strip can be determined to comply with *Dolan*, as a matter of law, without further findings.

Reversed and remanded with instructions to remand to county for further proceedings concerning conditions for improvements on S.E. 122nd Avenue; otherwise affirmed.