Argued and submitted April 23, affirmed on petition and cross-petition
July 20, 2001

Robert McCLURE
and Sharon McClure,
*Respondents - Cross-Petitioners,*

*v.*

CITY OF SPRINGFIELD,
*Petitioner - Cross-Respondent.*

2000-115; A113253

28 P3d 1222

Meg E. Kieran argued the cause for petitioner - cross-respondent. With her on the cross-respondent's brief was Harold, Leahy & Kieran.

David J. Hunnicutt argued the cause and filed the brief for respondents - cross-petitioners.

Before Deits, Chief Judge, and Brewer, Judge, and Van Hoomissen, Senior Judge.

BREWER, J.

### BREWER, J.

The City of Springfield (the city) seeks review of a Land Use Board of Appeals (LUBA) decision remanding, for the second time, its approval of a land partition sought by Robert and Sharon McClure (the McClures). As pertinent here, the city imposed conditions requiring dedications of property for a street right-of-way, a sidewalk, and a "clipped corner" for vision clearance purposes. The McClures cross-petition for review, asserting that LUBA erred in upholding the proposed street right-of-way exaction. We affirm.

In *McClure v. City of Springfield*, 37 Or LUBA 759 (2000), LUBA remanded the city's approval of the partition and dedication requirements on the ground that the city failed to adequately justify the required dedications under the test announced in *Dolan v. City of Tigard*, 512 US 374, 114 S Ct 2309, 129 L Ed 2d 304 (1994). In particular, LUBA determined that the city failed to show that its exactions were roughly proportional to the legitimate needs that the city found would be created by the proposed development. On remand, the city adopted additional findings justifying its dedication requirements, and the McClures again appealed the city's decision to LUBA. After its second review, LUBA once again remanded the city's decision, determining that the city failed to adequately justify two of the three required dedications. The city seeks review of that decision, and the McClures cross-petition for review of the portion of LUBA's opinion upholding the third required dedication.

The parties' primary disagreement concerns LUBA's application of the *Dolan* decision. In *Dolan*, the Supreme Court held that an exaction of real property may be sustained only when the exacting government demonstrates (1) that there is an "essential nexus" between the government's demand on the property owner and the harm addressed by the exaction, and (2) that the exaction is "roughly propor-tional" to the effects of the development.[1] We review LUBA's decision for errors of law. ORS 197.850(9)(a).

---

[1] *See Dolan*, 512 US at 389-91, for a discussion of the various standards states applied to exactions before the court's announcement of the "rough proportionality" test.

The facts are not in dispute, and we take them from LUBA's two opinions. The property to be divided into three lots is a 25,700-square-foot parcel bordered on the east by 8th Street, a local street with a 45-foot right-of-way, and bordered on the south by a 10-foot right-of-way for M Street, an improved street with an asphalt bicycle and pedestrian path. As proposed by the McClures, the land division would create Parcel 1 with frontage on 8th Street.[2] Parcel 2 would have access to 8th Street via a 20-foot panhandle north of Parcel 1. Parcel 3 would have access to 8th Street, also through a 20-foot panhandle south of Parcel 1.

The city's planning director approved the partition with conditions. One condition required the McClures to dedicate a 20-foot right-of-way on the south portion of the property to allow for the future development of M Street for both vehicular and bicycle traffic. A second condition required the dedication of a 10-foot by 10-foot triangular area on the southeast corner of the property to ensure adequate sight visibility and turning radius for the intersection at M and 8th streets (the "clipped corner"). The third condition required dedication of a five-foot strip along the 8th Street frontage to widen the 8th Street right-of-way for construction of a curbside sidewalk and street lighting. Petitioners also were required to improve the 8th Street frontage with sidewalks and street lighting.

The city's M Street right-of-way exaction would result in elimination of Parcel 3's panhandle access to 8th Street, replacing it with frontage on M Street. As modified by the city's dedication conditions, the parcels would appear as in this illustration taken from LUBA's opinion on review:

---

[2] Parcel 1 contains an existing dwelling.

The McClures appealed to the city planning commission, arguing that the conditions were excessive, unconstitutional exactions. The planning commission affirmed the planning director but modified the fourth condition by eliminating the requirement for immediate construction of a sidewalk and street lighting. The planning commission replaced that condition with a requirement that petitioners execute a waiver of remonstrance for the formation of a local improvement district, so as to ensure future sidewalk and street lighting improvements. The McClures appealed the city's decision to LUBA.

In its first opinion, LUBA made several conclusions about the exactions. It agreed with the parties that the city's enactment of dedication requirements as an ordinance did not relieve it of the obligation to make particularized findings showing that any resulting exactions were roughly proportional to the impact of the proposed development. *McClure*, 37 Or LUBA at 768-69. LUBA also rejected the city's argument that the McClures could not complain of a taking because they knew of the challenged conditions when they purchased the property while it was subject to a partition proceeding. LUBA said:

> "The fact that petitioners may have been aware of the conditions of approval in the first case does not provide a basis for concluding that petitioners agreed to the imposition of exactions, or that the exactions imposed here are roughly proportional to the impact of the proposed development." *Id.* at 770.

LUBA next determined that the city failed to show that any impact on its transportation facilities justified the exaction of 20 feet of additional right-of-way for M Street. LUBA also noted that the city had failed to identify and quantify the number of bicycle and pedestrian trips generated by the proposed development of the parcels. LUBA determined that the city made

> "no attempt to establish a relationship between the number of nonvehicular trips from the proposed development, whatever that number may be, and its effect on the transportation system. In summary, the city has not adequately explained why the increased vehicular, pedestrian, and bicycle traffic that may be expected from the additional lots

approved by the disputed partition constitute impacts that are roughly proportional to the required dedications and improvements along M Street and 8th Street." *Id.* at 773.

LUBA also concluded that the city failed to justify the M Street right-of-way dedication on the ground that the exaction was necessary to eliminate a safety hazard created by the establishment of a panhandle driveway on Parcel 3. However, LUBA held that the city could consider the benefits that would accrue to the subject property as a result of the exactions, and it rejected the McClures' argument that the city's decision was entirely unconstitutional. LUBA held that the city "may be able to adopt findings that justify some or all of the exactions imposed." *Id.* at 778.

On remand, the city adopted supplemental findings to support the required conditions. The McClures again appealed to the planning commission, and again the planning commission modified the condition about sidewalk improvement. As relevant here, the conditions finally imposed are as follows:

"7.    Dedicate 20 feet of right-of-way along the southern property line of the development area for the eventual extension of M Street.

"8.    Dedicate 5 feet of right-of-way along the full frontage of 8th Street to allow sufficient right-of-way for the construction of a curbside sidewalk.

"9.    Dedicate a 10 foot by 10 foot 'clipped corner' at the intersection of the M Street dedication and the 8th Street right-of-way.

"10.   Install a 5-foot curbside sidewalk, ADA-accessible driveway approaches for all 3 lots and street lighting.

"* * * * *

"* * * Condition #10 will be fulfilled by the recording of an Improvement Agreement for the construction of curbside sidewalks on 8th Street."

The commission also required the McClures to sign a waiver of remonstrance for the sidewalk improvements. The planning commission also made findings addressing the deficiencies LUBA had identified in the city's first set of findings justifying the exactions.

As quoted in LUBA's opinion, the findings were:

"1. The assumption that the [n]ew development will produce 19 vehicle trips per day is a valid measure of impacts because 19 trips per day is one of the lowest volumes of traffic generated by two permitted uses in the [low density residential (LDR) zone].

"2. Conditions of approval #7, #8, #9 and #10 are directly proportional to the impacts of the subject development on the local street system of creating two new parcels as proposed [by petitioners]. This is because the minimum 19 new trips per day the development will generate will comprise 1.86 percent of the 1020 trips that directly and daily impact the sections of local street serving the development area before connecting to a minor arterial street. The 4,371 square feet of right-of-way that is required to be dedicated comprises only 1.59 percent of the 276,700 square feet of planned right-of-way that the proposed development will impact. Since the 1.59 percent right-of-way dedication is a smaller fraction than the [1.86] percent of the vehicle impacts that the new development will produce, the required dedication is roughly proportional to the impacts of the development and is, in fact, less tha[n] what the city could exact if a direct pro rata dedication were required.

"3. The required 4,371 square foot right-of-way dedication is roughly proportional to the impacts of creating two new developable lots in the [LDR zone] because the city has determined that in order to provide adequate service to one LDR lot a minimum of 3,206 square feet of right-of-way is necessary. Since two lots are being created, the city could require up to 6,412 square feet. Because 4,371 square feet is less than 6,412 square feet, the required dedication is less than what could be required if an exact pro rata dedication were required.

"4. The creation of the panhandle driveway, as proposed by [petitioners], will impact the safety at the intersection of M Street and 8th Street by adding an additional 9 conflict points to the existing 32 conflict points and additional conflict points will occur with the school children using the most direct route to their appropriate public schools. It is difficult to assign a quantifiable value to decreased traffic safety in order to establish

proportionality. Therefore, the proper method to mitigate the degraded traffic safety is to restore the level of safety to its state prior to the impact. In order to mitigate the safety impacts specific to this proposed development, [petitioners] shall dedicate sufficient right of way to facilitate the extension of M Street and thereby reduce the number of conflict points to the number in existence prior to the development. In this case that required dedication is 20 feet along the southern property line." *McClure v. City of Springfield*, 39 Or LUBA 329, 335-36 (2001).

The McClures again appealed to LUBA, challenging the adequacy of the city's findings in support of the exactions. With respect to the 20-foot M Street right-of-way exaction, LUBA determined that the city had demonstrated an "essential nexus" between the exaction and "the city's legitimate governmental interests" in promoting safety and other traffic issues. However, LUBA held that the city had failed to establish that the extent of the exaction was roughly proportional to the extent of the impacts created by the development. According to LUBA, "the quantification of impacts does not, in and of itself, establish that the extent of the proposed exaction is roughly proportional to the extent of the proposed impacts [from the development]." *Id.* at 344.

LUBA criticized the city's attempt to justify the M Street right-of-way exaction based on a city-wide average level of right-of-way required to service a lot in the applicable land use zone. LUBA concluded that the city erroneously had attempted to justify the exaction as a means to fund its *general* public street improvement program, rather than by establishing that the exaction was roughly proportional to the impacts of the *particular* development. Notwithstanding that deficiency, LUBA concluded that the city had justified the M Street right-of-way exaction.[3]

---

[3] LUBA's opinion is not altogether clear on that point. LUBA determined that the city failed to "quantify the impacts of this development so as to justify the exaction." *Id.* at 344. It then said the city may have taken too much right-of-way when "compared to the identified impacts, safety issues and benefits to the property." *Id.* at 347. However, it ultimately concluded that, although it was "a very close question, we believe that the identified impacts, safety concerns and benefits justify the M Street exaction." *Id.* at 348.

In regard to the 8th Street sidewalk exaction, LUBA noted *Dolan*'s holding that dedications for sidewalks and other public ways are reasonable exactions to the extent that they mitigate congestion resulting from a proposed use of property. *Id.* at 349. Nonetheless, it found that the city failed to establish a relationship between the required 8th Street sidewalk dedication and the expected vehicular and nonvehicular impacts of the development. LUBA rejected the city's conclusion that it could exact land for sidewalk improvements based on its generalized transportation needs without making a determination "that relates identified impacts to the exactions." As to the clipped corner, LUBA concluded that the city failed to make any individualized determination whatsoever.

On review, the city challenges LUBA's segregation for purposes of analysis of the M Street dedication requirement from the 8th Street sidewalk and clipped corner dedication requirements. According to the city, the sidewalk and clipped corner requirements are part of an integrated response to the development's effects. In particular, the city asserts that its findings show that the proposed development will increase area traffic by adding a minimum of 19 vehicle trips and 11 pedestrian trips per day. It relies on evidence in the record regarding the number of "conflict points" and safety issues created by the proposal's use of a panhandle driveway.[4] The city argues that its findings demonstrate that the *combined* dedications, including the M Street right-of-way, the 8th Street sidewalk, and the clipped corner constitute a reasonable solution to those effects. The city relies on *Art Piculell Group v. Clackamas County*, 142 Or App 327, 922 P2d 1227 (1996), in which this court held that a precise mathematical relationship between an exaction and the effects of a development is not necessary, that "there can be other kinds of developmental impacts that residential developments can have on street systems, and that all of the impacts appropriately enter into the analysis." *Id.* at 338 (citing *J.C. Reeves Corp. v. Clackamas County*, 131 Or App 615, 622, 887 P2d 360 (1994)).

---

[4] A city staff report in the record describes a "conflict point" as a site where a collision may take place.

■     Although we agree that a complete analysis properly includes consideration of all of the effects of a particular development and that local governments may tailor their dedication requirements to ameliorate those effects, the city's findings here nevertheless are incomplete. The city explained the need for the M Street dedication, utilizing a detailed calculation to demonstrate that the exaction represented a proportional response to the increase in traffic—19 vehicle trips per day—that the proposed development was expected to generate. The city did not, however, explain how the 8th Street sidewalk and clipped corner dedication requirements were relevant or proportional to the expected impacts. Rather, the city's findings appear either to omit consideration of those exactions or to assume implicitly that they are part of the total required dedication. We have no difficulty accepting that sidewalks and clipped corners can advance a community's interest in safe streets, but in the absence of findings explaining how the proposed exactions further that aim—and do so proportionally to the effects of the proposed partitioning—the justification required by *Dolan* is missing. We therefore agree with LUBA that the city has not adequately justified the proposed 8th Street sidewalk and clipped corner exactions of property. We therefore affirm LUBA's decision in those respects.

■     In their cross-petition, the McClures contend that LUBA erred in affirming the M Street exaction. They argue that LUBA erred in concluding that the city's findings support the determination that the M Street exaction is roughly proportional to the effects of the development.[5] We disagree.

The city addressed *Dolan*'s "essential nexus" requirement through a conflict point study provided by the city's traffic engineer. The study analyzed the conflict points within 30 feet of the M Street intersection that present a safety concern. That analysis is a quantified description of

---

[5] Although the McClures' argument is couched in language suggesting that LUBA's decision is not supported by substantial evidence, their assignment of error actually focuses on an issue of law, namely, LUBA's determination regarding the showing needed to establish that the exactions meet the two-part test set out in *Dolan*.

the proposed development's effects in terms of the safety hazards posed by placing a panhandle driveway directly adjacent to a pedestrian and bicycle path and within 30 feet of an intersection, as proposed by the McClures in the partition request. The analysis constitutes substantial evidence that the M Street right-of-way exaction is a reasonable solution to the proposed development.

The city addressed the "rough proportionality" step of the *Dolan* test by linking 19 additional vehicle trips to an additional 20 feet of right-of-way. It compared the number of vehicle trips generated with the total daily trips on the two local roads to be used by the new occupants of the proposed lots. The resulting percentage was then compared to another percentage calculation that, in turn, compared the square footage of right-of-way exacted with the total right-of-way area on the two local streets. By comparing the two percentages, the city determined that the percentage of land exacted (1.59 percent) was less than the percentage of trips on the two roads that the development was expected to generate (1.86 percent).

The McClures' argument, and the city's serial efforts to justify its requirements, illustrate the quandary facing a local government that attempts to justify a street exaction under *Dolan*.[6] It is true, as the concurring LUBA board member pointed out, that the rough-proportionality test requires a comparison of "different kinds of things." For example, a

---

[6] The exactions in *Dolan* were the result of an adjudicatory process in which the developer sought to construct certain improvements, and the City of Tigard responded with conditions *individually tailored* to that development. The two-part inquiry that the Supreme Court announced was designed to protect the property owner from being singled out for responsibility to make improvements having no or a limited relationship to the requested development, simply because the owner sought to exercise rights incidental to property ownership. According to some courts, the application of that test to exactions grounded in legislatively established community-wide street and traffic standards, is questionable. *See, e.g., Garneau v. The City of Seattle*, 147 F3d 802, 810-11 (9th Cir 1998) (describing as "unsettled" the question of whether the *Dolan* test applies to legislative as opposed to administrative exactions); *cf. Schultz v. City of Grants Pass*, 131 Or App 220, 226-29, 884 P2d 569 (1994) (holding that it is the "character of the restriction" that triggers the *Dolan* analysis, not whether it was imposed pursuant to local legislation). Because the parties have not addressed the issue and the record is inadequate to consider it, we express no opinion as to whether the city's code is sufficiently detailed and uniformly applied to obviate the concerns about *ad hoc* exactions discussed in *Dolan*.

comparison between a particular number of vehicle trips and an increase in street right-of-way area involves different elements of a traffic scheme. However, whether the comparison is perfect is beside the point. The McClures' challenge calls for a highly detailed and precise explanation of each effect produced by a proposed development and an equally detailed and precise correlation between those effects and the proposed exactions. That call for precision runs afoul of the plurality holding in *Dolan* that no "precise mathematical calculation" is required to meet its rough proportionality standard. *Dolan*, 512 US at 391. The city's calculations regarding the M Street dedication requirement were sufficient to satisfy that standard.

■■   The McClures also assert that there is no evidence in the record showing that M Street will, in fact, ever be improved because the city has not obtained dedications from all other abutting property owners. Without such evidence, the McClures reason, any alleged benefits resulting from the improvement are illusory. Again, we disagree. If each property owner could avoid an exaction because the city had not yet obtained all dedications necessary to improve the street, no improvement would be possible. Further, the timing of the planned improvements to M Street does not render uncertain the determination of whether the city's proposed solution to the effects of the partition is roughly proportional under *Dolan*. LUBA properly rejected that argument.

Affirmed on petition and cross-petition.