Argued and submitted November 21, 2011, affirmed July 5, 2012

Jed BROWN,
*Plaintiff-Respondent,*

*v.*

CITY OF MEDFORD,
*Defendant-Appellant.*

Jackson County Circuit Court
082689L7; A147176

283 P3d 367

John R. Huttl, City Attorney's Office, argued the cause and filed the brief for appellant.

Erik J. Glatte argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Plaintiff applied to the City of Medford for approval to partition his parcel into a northern lot and southern lot. The city's planning commission approved a tentative plan of the partition, but on the condition that plaintiff dedicate an easement over the southern lot for a future public street. Plaintiff then filed a complaint alleging that the city's exaction of the easement violated the Takings Clause of the Fifth Amendment to the United States Constitution; Article I, section 18, of the Oregon Constitution; and ORS 197.796. After a series of pretrial rulings, the city stipulated to the entry of a judgment awarding plaintiff $15,000 in damages as well as his attorney fees but reserved its right to appeal the earlier adverse rulings. The city now exercises that right and argues (1) that plaintiff's claims were not ripe for adjudication, but if they were, then the trial court (2) erred in ruling that there was no "essential nexus" between the proposed development and the city's exaction and (3) ultimately chose the wrong date for valuing the exaction. For the reasons that follow, we affirm.

The relevant facts for purposes of this appeal are undisputed. Plaintiff owned a half-acre parcel that was bordered to the north by Finley Lane and to the south by a development called the West McAndrews Subdivision. Plaintiff applied to the city for tentative plan approval of a two-lot partition of his parcel. He proposed to create a northern lot and a southern "flag lot," both of which would have ingress and egress via Finley Lane to the north.

By the time that plaintiff sought approval of the partition, the city had already granted tentative plan approval of the West McAndrews Subdivision. One of the conditions of that earlier approval required the subdivision's developer to dedicate and improve a half-width street, Brady Way, on its northern boundary—the boundary that abuts plaintiff's parcel. Notwithstanding that approval, Brady Way had not been improved or dedicated to the city by the time of plaintiff's partition application.

Plaintiff did not propose any access from his property onto Brady Way. Instead, he proposed to use Finley Lane to the north for both lots. Nonetheless, the Medford Public

Works Department recommended that the city's planning commission impose a condition on plaintiff's two-lot partition that would expand the yet-to-be-dedicated Brady Way into a full-width public street. Specifically, the Public Works Department recommended that plaintiff be required to "dedicate 19 feet of public right-of-way along [the] south side of this proposed land partition for the remainder of the north half of right-of-way for Brady Way[.]"

The Medford Public Works Department justified the condition as follows:

"Local street right-of-way dedication and construction requirements identified by the Public Works Department and required by the City are the minimum required to protect the public interest and are necessary for additional or densification of development in the City without detracting from the common good enjoyed by existing properties. Developments are required to provide half-street improvements to abutting streets, including associated right-of-way dedications, to ensure that new development and density intensification provides the current level of urban services and adequate street circulation is maintained.

"The benefits of public right-of-way dedication and improvements include: providing access and transportation connection at urban level of service standards, on street parking, improved connectivity reducing all modes of trips generated, decreased emergency response times, benefits from using right-of-way to provide public utility services, the additional traffic that is being generated by this proposed land division and the necessity to provide connections for all modes of trips generated."

At a public hearing before the planning commission, plaintiff opposed that condition on the ground that there was no nexus between his proposed partition and the dedication demanded by the city, but the planning commission adopted the recommendation. Plaintiff then appealed the planning commission's decision to the city council, again arguing that the city had failed to demonstrate a nexus between the effect of his partition and the city's desire to widen Brady Way—a right of way that his parcels would not even access. In its final order affirming the planning commission's decision, the city council reasoned as follows:

"[Plaintiff] claims there is no nexus between this required dedication of Brady Way and the City's claimed code requirements that development not prevent future adequacy of transportation system under Medford Code section 10.452, 10.453 and 10.471.

"However, Brady Way was already approved by the planning commission to be located in that area as a result of the neighboring plat * * *, and if [plaintiff's] proposed land division was approved without the required dedication, it would prevent future connectivity with pedestrian traffic and interfere with other modes of transportation. There is a nexus."

After the city council affirmed the tentative plan approval—including the required dedication of the right of way—plaintiff filed this action. He alleged that the required dedication constituted an "impermissible exaction as there is no public need for the same, there is virtually no impact on public infrastructure and services as a result of the proposed development of the subject property, no nexus, and the exaction is not roughly proportional to the proposed development." Plaintiff alleged claims under Article I, section 18, of the Oregon Constitution ("Private property shall not be taken for public use * * * without just compensation[.]") and the Fifth Amendment ("nor shall private property be taken for public use, without just compensation").[1] He also alleged a claim under ORS 197.796, a statute that allows land use applicants to "accept" unconstitutional conditions of approval and then simultaneously challenge them in state court.[2] Among other things, that statute provides that,

---

[1] That clause of the Fifth Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is binding on the states. *Chicago, B. & Q. R. Co. v. Chicago*, 166 US 226, 241, 17 S Ct 581, 41 L Ed 979 (1897).

[2] ORS 197.796(1) provides:

"An applicant for a land use decision, limited land use decision or expedited land division or for a permit under ORS 215.427 or 227.178 may accept a condition of approval imposed under ORS 215.416 or 227.175 and file a challenge to the condition under this section. Acceptance by an applicant for a land use decision, limited land use decision, expedited land division or permit under ORS 215.427 or 227.178 of a condition of approval imposed under ORS 215.416 or 227.175 does not constitute a waiver of the right to challenge the condition of approval. Acceptance of a condition may include but is not limited to paying a fee, performing an act or providing satisfactory evidence of arrangements to pay the fee or to ensure compliance with the condition."

"[i]n any challenge to a condition of approval that is subject to the Takings Clause of the Fifth Amendment to the United States Constitution, the local government shall have the burden of demonstrating compliance with the constitutional requirements for imposing the condition." ORS 197.796(4).

Initially, the city moved to dismiss plaintiff's complaint on the ground that "the facts as alleged fail to state a claim under Oregon takings jurisprudence, and the court has no jurisdiction under the federal exhaustion and ripeness requirements," citing, among other authorities, *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 193-95, 105 S Ct 3108, 87 L Ed 2d 126 (1985) (explaining that a federal takings claim based on government regulations is not "ripe" until a local government has reached a final decision and the plaintiff has sought "compensation through the procedures the State has provided for doing so"). The trial court denied the motion to dismiss.[3]

The parties subsequently filed cross-motions for summary judgment on the question whether the city had, in the language of ORS 197.796(4), carried its "burden of demonstrating compliance with the constitutional requirements for imposing the condition." The relevant constitutional requirements, the parties agreed, derived from two Supreme Court cases, *Nollan v. California Coastal Comm'n*, 483 US 825, 831-32, 107 S Ct 3141, 97 L Ed 2d 677 (1987), and *Dolan v. City of Tigard*, 512 US 374, 384, 114 S Ct 2309, 129 L Ed 2d 304 (1994). Together, those cases establish a two-part test for assessing the constitutionality of a government exaction of a dedication of private property: First, the exaction must substantially advance the same government interest that would furnish a valid ground for denial of the development permit—also known as the "essential nexus" prong of the test. *Nollan*, 483 US at 836-37. Second, the nature and extent of the exaction must be "roughly proportional" to the effect of the proposed development. *Dolan*, 512 US at 385.

---

[3] The court granted a separate motion that plaintiff make his complaint more definite and certain, and plaintiff filed an amended complaint in which he alleged that he had"'accepted' the Final Order of the Planning Commission for purposes of ORS 197.796."

The parties agreed to develop the summary judgment record in two phases. They asked the court to consider, initially, whether there was a nexus between the city's exaction and the government interest that would have allowed the city to deny the permit. If the court determined that there was such a nexus, then the city would be allowed to present further evidence on the question of "rough proportionality." The court, following that procedure, ruled that the city had failed to demonstrate the required nexus, thus ending the inquiry regarding the constitutionality of the exaction. Accordingly, the court granted plaintiff's motion for summary judgment on that question, denied defendant's cross-motion, and set the case for trial solely on the issue of damages for the unconstitutional exaction.

In September 2010, in anticipation of the upcoming trial date, the city filed a motion asking that the jury instructions "reflect a date of August 10, 2010, to be used as the date of valuation for plaintiff's takings claims." The city argued that "[t]he date of valuation on an inverse condemnation action is the date of physical invasion. Here, the physical invasion by the City is the dedication of plaintiff's property to the City for use as public right of way," and the date of that dedication, the city insisted, was August 10, 2010—the day that plaintiff submitted a final plat showing the dedication. *See* ORS 92.014(2) (providing that "an instrument dedicating land to public use may not be accepted for recording in this state unless the instrument bears the approval of the city or county authorized by law to accept the dedication"); ORS 92.175 (describing methods by which "[l]and for property dedicated for public purposes may be provided to the city or county having jurisdiction over the land," including by "dedication on the partition plat, provided that the city or county indicates acceptance of the dedication on the face of the plat"). In response to the city's motion, plaintiff argued that the valuation date is December 21, 2007—the date on which the city council rendered a final decision on his application for approval of the tentative partition plan.

At the hearing on the city's pretrial motion, the parties and the court discussed the "pivotal moment in time to set value" and, in the process of exploring that issue, also

considered whether a "taking" can occur before the final plat is recorded. As for the latter question, plaintiff argued that, in granting its motion for summary judgment on the nexus issue, the trial court (albeit a different judge at that point[4]) had already implicitly decided that a taking had occurred when the city imposed the unconstitutional development condition.

In a written order denying the city's motion, the trial court concluded that, under ORS 197.796, the "pivotal event" for purposes of valuation is the date of the final order by the local government. The court explained that,

> "[p]rior to ORS 197.796 a landowner (in plaintiff's position) had to proceed to develop the property and waive a potential challenge, or put the project on hold, perhaps for years, and challenge the condition in court. It appears to the Court that if the imposition of the condition itself was not a pivotal event, the statute would never have been necessary, particularly when ORS 197.796(2) envisions the potential suit for damages within 180 days of the decision. Clearly the courts and the legislature felt the action was 'ripe' at the time the condition attached and therefore the date of valuation for damages also occurred at that time.
>
> "The Court also feels however, that the issue was resolved in this case [by the order] on the parties' cross motions for summary judgment.
>
> "* * * * *
>
> "It would seem inconceivable that the Court could in January of 2010 make the finding of a taking, but delay the determination of value of that taking to some later date. There is no case law cited to support that position and the Court feels it is not appropriate. It is therefore the Court's order herein that for purposes of the valuation of plaintiff's property the taking and the valuation date for determining the property value was the date the condition of dedication was imposed by the City of Medford, December 21, 2007."

After the court issued its ruling on the valuation date, the parties agreed that the value of the right of way was $15,000, and they stipulated to entry of a judgment (the

---

[4] The motion to dismiss and cross-motions for summary judgment were decided by the Honorable Mark Schiveley. The Honorable Ronald D. Grensky decided the motion regarding the valuation date.

judgment also included attorney fee amount) against the city that reserved the city's right to appellate review of the court's earlier rulings. ORS 19.245(3).

On appeal, the city now challenges the court's rulings at each stage of the case: the motion to dismiss, the cross-motions for summary judgment, and the motion to determine the valuation date for calculating damages. We address, and reject, each in turn.

In its first assignment of error, the city contends that the court should have "dismiss[ed] plaintiff's statutory and constitutional claims as unripe," because plaintiff "had not taken an act to ensure satisfaction of the challenged condition" and the city "had not taken any final action to obtain a possessory interest in plaintiff's property." According to the city, although plaintiff obtained tentative plan approval, he did not suffer any "actual, concrete injury" until the city finally "obtained a possessory interest in his property"—that is, with "final plat approval" or when the city "has taken the final administrative act of obtaining the right-of-way."

We are not persuaded, as a matter of statutory or constitutional law, that an exaction claim is not justiciable until the city actually acquires the exacted property. ORS 197.796 specifically authorizes an applicant for a "limited land use decision"—a decision that, by definition, includes the "approval or denial of a tentative subdivision or partition plan," ORS 197.015(12)—to "accept a condition of approval * * * and file a challenge to the condition under this section," ORS 197.796(1). "Acceptance of a condition" is not limited to consummating the dedication of the property; rather, "[a]cceptance of a condition may include but is not limited to paying a fee, performing an act or providing satisfactory evidence of arrangements to pay the fee or to ensure compliance with the condition." ORS 197.796(1).

Nor do plaintiff's constitutional claims hinge on an actual, physical invasion. Plaintiff alleged that the city, by conditioning his partition on the dedication of an easement, imposed an "impermissible exaction as there is no public need for the same, there is virtually no impact on public infrastructure and services as a result of the proposed development of the subject property, no nexus,

and the exaction is not roughly proportional to the proposed development." That is, plaintiff alleged that the city violated the principles in *Nollan* and *Dolan* by requiring him to cede part of his property or else forgo the partition.

The constitutionality of an exaction of that nature does not depend on a "physical invasion." *See West Linn Corporate Park v. City of West Linn*, 349 Or 58, 86, 240 P3d 29 (2010) (describing the nature of *Nollan/Dolan* analysis). Rather, in more recent cases—namely, *Lingle v. Chevron USA, Inc.*, 544 US 528, 125 S Ct 2074, 161 L Ed 2d 876 (2005), and *Monterey v. Del Monte Dunes*, 526 US 687, 702, 119 S Ct 1624, 143 L Ed 2d 882 (1999), the Court emphasized "the 'special context' in which *Nollan* and *Dolan* arose and pointedly did not categorize the exactions at issue in *Nollan* and *Dolan* as takings, instead analyzing them under the doctrine of 'unconstitutional conditions.'" *West Linn Corporate Park*, 349 Or at 86. The doctrine of unconstitutional conditions "provides that 'the government may not require a person to give up a constitutional right— here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit has little or no relationship to the property.'" *Lingle*, 544 US at 547 (quoting *Dolan*, 512 US at 385). In theory, it is the imposition of that unconstitutional condition—and not the later physical invasion of property—that violates a property owner's rights. *See St. Johns River Water Mgmt. Dist. v. Koontz*, 5 So 3d 8, 12 n 4 (Fla Ct App Fifth Dist 2009), *quashed on other grounds*, 77 So 3d 1220 (Fla 2011) ("An attempt by government to extort is no less reprehensible than a *fait accompli*.").

In the exaction context, any constitutional "ripeness" concerns, in our view, depend not on the date of physical invasion but on whether the local government has reached a sufficiently "final" decision for review. In this case, the city's approval of the tentative partition plan was the final decision requiring a dedicated easement as a condition of development. Although the approval of the tentative plan does not "constitute final acceptance of the plat of the proposed subdivision or partition for recording," it nonetheless binds the city as to the terms of the approval:

"[A]pproval by a city or county of such tentative plan *shall be binding upon the city or county for the purposes of the preparation of the subdivision or partition plat,* and the city or county *may require only such changes in the subdivision or partition plat as are necessary for compliance with the terms of its approval of the tentative plan* for the proposed subdivision or partition."

ORS 92.040(1) (emphasis added). Thus, the city's limited land use decision approving the tentative plan is, for ripeness purposes, the local government's final word on the conditions of development. It is not necessary that a property owner actually dedicate the easement before there is an actual, concrete injury for which that property owner can seek redress in court. The trial court did not err in refusing to dismiss plaintiff's claims as unripe.[5]

In its second assignment, the city argues that the trial court erred in granting plaintiff's motion for summary judgment and denying the city's cross-motion on the "nexus" question—that is, by ruling that the city failed to carry its burden of demonstrating an "essential nexus" between the required dedication and the effects of the proposed partition. We agree with the trial court.

As previously noted, the relevant facts are undisputed. Plaintiff sought to partition his lot into a northern and southern lot, both of which would access Finley Lane to the north. The city conditioned its approval of that partition on plaintiff dedicating 19 feet for a public right of way along the *south* side of the proposed partition to expand Brady Way, a half-width street that was approved

---

[5] In addition to arguing that plaintiff did not suffer an "actual, concrete injury" until submittal of the final plat, the city suggests that plaintiff failed to adequately allege or prove that he "accepted" the condition of approval for purposes of ORS 197.796. The city raised the pleading issue in its motion to dismiss the original complaint, and plaintiff responded that, "[t]o the extent that it is required, Plaintiff is willing to amend his complaint to assert that he has continued with the project under the unconstitutional conditions required since he has filed plans with the City for the development and building permits are pending. Therefore, with the amendment to the complaint Plaintiff has satisfied the statute." Plaintiff subsequently filed an amended complaint in which he baldly alleged that he had "'accepted' the Final Order of the Planning Commission for purposes of ORS 197.796." The city, however, did not challenge the sufficiency of that allegation by way of a later motion to dismiss, nor did it raise proof of "acceptance" in its motion for summary judgment. Under the circumstances, we agree with plaintiff that the "acceptance" issue is not properly before us.

as part of a neighboring subdivision but not yet constructed. The city justified the exaction on the ground that "Brady Way was already approved by the planning commission to be located in that area as a result of the neighboring plat * * *, and if [plaintiff's] proposed land division was approved without the required dedication, it would prevent future connectivity with pedestrian traffic and interfere with other modes of transportation." The trial court ruled that the dedication condition was unconstitutional, because plaintiff did not even take access from Brady Way and, therefore, the city's exaction of that right of way lacked the requisite nexus to the impact of the proposed partition.

On appeal, the city contends that the trial court erred because there is in fact a nexus "between the City of Medford's imposed condition and the city's policies sought to be advanced by the condition." The city's argument, however, proceeds from a fundamental misconception about the nexus that is required by *Nollan* and *Dolan*. The question is not whether the city can identify a connection between the condition and some legitimate public policy that the city seeks to advance. Indeed, the Court in *Nollan* and *Dolan* never "question[ed] whether the exactions would substantially advance *some* legitimate state interest. Rather, the issue was whether the exactions substantially advanced the *same* interests that land-use authorities asserted would allow them to deny the permit altogether." *Lingle*, 544 US at 547 (citations omitted; emphasis in original).

On appeal, the city does not identify the code provisions or specific policies that it believes would have allowed it to deny plaintiff's partition.[6] Instead, the city points generally to "safety" and "connectivity," suggesting that we have offered a blanket approval of street dedications based on those policies:

> "In the present case, the city's requirements that [plaintiff] dedicate right-of-way frontage for future Brady Way are supported by an essential nexus to policies of

---

[6] The city's final order mentioned "Medford Code section[s] 10.452, 10.453 and 10.471," but the text of those provisions is not included or discussed in the opening brief.

safety and connectivity as the court upheld in [*McClure v. City of Springfield*, 175 Or App 425, 28 P3d 1222 (2001), *rev den*, 334 Or 327 (2002), and *Hallmark Inns & Resorts v. City of Lake Oswego*, 193 Or App 24, 88 P3d 284 (2004)]."

The city's reading of our prior cases is selective, at best. In *McClure*, we did not "uphold," in some categorical sense, an essential nexus between street dedications and safety. In fact, we held that the City of Springfield had *not* demonstrated the requisite nexus between its generalized transportation needs and the sidewalk dedication it exacted from the McClures, the property owners. The McClures, like plaintiff, had applied to partition their property, and Springfield had conditioned approval of the partition on two right-of-way dedications, one on M Street and a second on 8th Street. The 8th Street dedication involved a sidewalk and "clipped corner." LUBA concluded that Springfield had failed to justify the proposed exaction of the 8th Street dedication, and the city sought review of LUBA's decision. We agreed with LUBA:

> "The city explained the need for the M Street dedication, utilizing a detailed calculation to demonstrate that the exaction represented a proportional response to the increase in traffic—19 vehicle trips per day—that the proposed development was expected to generate. *The city did not, however, explain how the 8th Street sidewalk and clipped corner dedication requirements were relevant or proportional to the expected impacts.* Rather, the city's findings appear either to omit consideration of those exactions or to assume implicitly that they are part of the total required dedication. We have no difficulty accepting that sidewalks and clipped corners can advance a community's interest in safe streets, *but in the absence of findings explaining how the proposed exactions further that aim—and do so proportionally to the effects of the proposed partitioning—the justification required by* Dolan *is missing*. We therefore agree with LUBA that the city has not adequately justified the proposed 8th Street sidewalk and clipped corner exactions of property. We therefore affirm LUBA's decision in those respects."

175 Or App at 434 (emphasis added).[7]

---

[7] In its discussion of *McClure*, the city argues, "The court upheld the nexus. 'We have no difficulty accepting that sidewalks and clipped corners can advance a community's interest in safe streets[.]' *McClure, supra*, at 434." As the full quote

The city's reliance on *Hallmark Inns & Resorts* is similarly misplaced. According to the city, in that case, we "upheld as a nexus the city's goal of interconnectivity for pedestrians when the city required Hallmark Inns to place a pedestrian easement across its property[.]" Again, the "essential nexus" question is not whether certain governmental goals will be upheld or struck down. Rather, courts must examine the nexus between the condition imposed and the interests that the local government asserts would allow it to deny the application. *Hallmark Inns & Resorts* is not an exception to that approach. In that case, we addressed Hallmark's contention that "there is, logically and practically, an inadequate relationship between the pathway condition and the interest in promoting connectivity and safe and convenient nonvehicular travel, which the city invokes as justifying that condition [of dedicating a pedestrian pathway through its corporate headquarters]." 193 Or App at 35. Hallmark argued that the city's pedestrian pathway requirements, which were meant to implement administrative rules regarding optimum trip length for cyclists and pedestrians, would still have been satisfied without the pathway across Hallmark's property; hence, it argued, the pathway did not promote the city's asserted interest. We held that "Hallmark's argument misses the point," and we instead agreed with the city that "the trip length is the *entire* trip length, not just the distance to get around the Hallmark parcel." *Id.* at 36 (emphasis in *Hallmark Inns & Resorts*). When the distance around the parcel was combined with the distance from travelers' residences, the distance would exceed the optimum trip distance. Thus, we concluded that the "city adequately established an 'essential nexus' between the pathway requirement and the legitimate governmental interest of promoting transportation connectivity and alternative modes of nonvehicular travel." *Id.*

Here, unlike in *Hallmark Inns & Resorts*, the city has not shown the requisite nexus to any policies or code provisions that would have allowed it to deny plaintiff's partition. Plaintiff proposed to create two lots, neither of

---

demonstrates, the city crops a rather important part of the sentence—our holding that the local government had *not* shown the nexus.

which would access Brady Way to the south, the undeveloped half-street that the city wanted to expand over plaintiff's property. There is simply nothing in the record to suggest that plaintiff's proposed partition would have any direct or indirect effect on Brady Way, or that plaintiff would be taking access in the future to Brady Way from either lot. Nor is there anything that explains how the partition would, as the city stated in its order, "prevent future connectivity with pedestrian traffic and interfere with other modes of transportation." Put another way: As noted above, a nexus exists when "the exaction[ ] substantially advance[s] the *same* interests that [city] authorities asserted would allow them to deny the permit altogether." *Lingle*, 544 US at 547 (emphasis in original). In this case, that means that the city would have to show (1) what interests would allow the city to deny plaintiff's partition, and (2) how the exaction would serve those interests. Yet there is nothing in the record from which we can identify the basis that the city could assert in denying plaintiff's partition; there is no explanation as to why the city could deny plaintiff's partition in order to enhance connectivity or traffic flow, in light of the fact that the negative effect on connectivity and traffic flow caused by converting one parcel into two would be, as best we can tell, negligible. Given the paucity in the record regarding the effects of plaintiff's partition in those respects, we agree with the trial court's conclusion that there is no genuine issue of fact regarding the "essential nexus" prong of the *Nollan/Dolan* test. We therefore reject the city's second assignment of error.

The city's third assignment concerns the court's ruling on the city's motion regarding the valuation date for purposes of determining plaintiff's damages. Drawing on its ripeness contentions, the city argued to the trial court that "just compensation" for the required easement should be determined no earlier than the date on which the final plat was submitted. The trial court disagreed, establishing the date that the city imposed the unconstitutional condition—that is, the date of its final decision on the tentative plan for the partition—as the valuation date.

The city now reprises its argument that plaintiff's damages must be established as of the date that the final

plat is submitted, because until that time "the imposition of a condition on a tentative plat approval does not create an injury for purposes of recovering damages." According to the city, "submittal for final plat and the actual dedication of the right-of-way is the act by the applicant that provides assurance that the applicant will comply with the condition. This is the date when the city acquires the property. This is the date for valuation."

For reasons similar to those discussed regarding ripeness, we are not persuaded that the local government must actually acquire the plaintiff's property before a plaintiff is entitled to seek damages based on the imposition of an unconstitutional condition. 251 Or App at 52. Moreover, ORS 197.796(2) states that "[a]ny *action for damages* under this section shall be filed in the circuit court of the county in which *the application was submitted* within 180 days of *the date of the decision.*" (Emphasis added.) The "application" in this case was plaintiff's application for a partition, and plaintiff was injured when the city rendered its final decision on that application—the tentative plan approval that imposed an unconstitutional exaction. 251 Or App at 51. We see no reason why, under ORS 197.796 and takings jurisprudence, plaintiff's damages should not be determined as of the date of that injury. *Cf. First Lutheran Church v. Los Angeles County*, 482 US 304, 320 n 10, 107 S Ct 2378, 96 L Ed 2d 250 (1987) (for purposes of just compensation under the federal constitution, even though "an illegitimate taking might not occur until the government refuses to pay, the interference that effects a taking might begin much earlier, and compensation is measured from that time"); *Hawkins v. City of La Grande*, 315 Or 57, 67, 843 P2d 400 (1992) (explaining that, in the context of inverse condemnation, "'[s]uccessful litigation against the governmental agency is a factual determination that there has been a 'taking' and in effect forces the governmental agency to purchase the interest taken. The 'taking' in that case relates back to the date of the beginning of the governmental conduct that is determined to be a 'taking'" (quoting *Restatement (Second) of Property* § 8.1, comment d (1977)).

Affirmed.